DET 127271 87

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | Dist |
|---|---|
| Name (under which you were convicted): CORNELIUS WARE | |
| Place of Confinement: Ionia Correctional Facility, 1576 West Bluewater Highway; Ionia, Michigan 48846 | Prisoner No.: 196489 |
| Petitioner (include the name under which you were convicted) CORNELIUS WARE v | Respondent (authorized person having custody of petitioner) JOHN DAVIDS, Warden |
| The Attorney General of the State of Michigan | |

Case:2:19-cv-13602
Judge: Steeh, George Caram
MJ: Patti, Anthony P.
Filed: 12-06-2019 At 09:29 AM
HC WARE V DAVIDS (BH)

## WRIT OF HABEAS CORPUS PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

WAYNE COUNTY CIRCUIT COURT
1441 ST. ANTOINE
DETROIT, MICHIGAN 48226

(b) Criminal docket or case number (if you know): **14-0562 & 63-01**

2. (a) Date of the judgment of conviction (if you know): **August 13, 2014**

(b) Date of sentencing: **September 03, 2014**

3. Length of sentence: **50 years for each conviction and 26 to 50 years for possession of a firearm.**

4. In this case, were you convicted on more than one count or of more than one crime? **Yes** ( ) No

5. Identify all crimes of which you were convicted and sentenced in this case:

MCL 750.204(2)(b), second-degree arson, MCL 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), aggravated stalking, MCL 750.411i(2)(a), and felon in possession of a firearm, MCL 750.224f.

6. (a) What was your plea? (Check one)

(1) **Not guilty**

(2) ___Guilty

(3) ___Nolo contendere (no contest)

(4) ___Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? **N/A**

(c) If you went to trial, what kind of trial did you have? (Check one)

**Jury**

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

**Yes**

8. Did you appeal from the judgment of conviction?

**Yes**

9. If you did appeal, answer the following:

(a) Name of court: **Michigan Court of Appeals**

(b) Docket or case number (if you know): **COA #323710 & 323711**

(c) Result: Denied oral arguments and affirmed all three convictions and sentences

(d) Date of result (if you know **March 22, 2016**

(e) Citation to the case (if you know): **People v. Ware, 2016 Mich. App. LEXIS 609**

(f) Grounds raised: **INEFFECTIVE ASSISTANCE OF COUNSEL & JUDICIAL FACT FINDING AT SENTENCING**

Defendant **firstly (1)** contends that his trial counsel should have investigated and presented witnesses to support his alibi defense, **(2)** that his trial counsel should have sought to suppress the evidence, and **(3)** that his trial counsel's failure to object to the admission of the Personal Protection Order all were objectively unreasonable. **Secondly**, Defendant contends **(1)** that the trial court improperly based his sentences on facts found by the judge rather than the jury and **(2)** defendant asserts that his sentences for aggravated stalking and felon in possession of a firearm are invalid because, even with consideration of his status as a habitual fourth offender, they exceed the statutory maximums. The Court Appeals affirm the defendant's

convictions but remand to the trial court to determine the need for resentencing as required by *People v Lockridge 498 Mich 358 (2015).*

(g) Did you seek further review by a higher state court? **Yes** (**X**) If yes,

answer the following:

(1) Name of court: **Michigan Supreme Court**

(2) Docket or case number (if you know): **MSC #153735-6**

(3) Result:

**Denied on the grounds that they were not persuaded that the questions raised should be reviewed by their court**

(4) Date of result (if you know): September 27, 2016

(5) Citation to the case (if you know): **People v. Ware, 2016 Mich. LEXIS 1992**

(6) Grounds raised:

**(1)** contends that his trial counsel should have investigated and presented witnesses to support his alibi defense, **(2)** that his trial counsel should have sought to suppress the evidence, and **(3)** that his trial counsel's failure to object to the admission of the Personal Protection Order all were objectively unreasonable pursuant to MCR 6.305(C)(7) holding these claim in abeyance pending resolution of his sentencing issues on remand to the circuit court.

(h) Did you file a petition for certiorari in the United States Supreme Court? **No.** If yes, answer the

following:

(1) Docket or case number (if you know): ______________________

(2) Result: ______________________

(3) Date of result (if you know): ______________________

(4) Citation to the case (if you know): ______________________

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? **Yes**

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: **Michigan Court of Appeals**

(2) Docket or case number (if you know): See Above **COA #323710 & 323711**

(3) Date of filing (if you know): D/K

(4) Nature of the proceeding: **REMAND**

(5) Grounds raised:

Did the trial court improperly based the petitioner's sentences on facts found

by the judge rather than the jury and defendant asserts that his sentences for aggravated stalking and felon in possession of a firearm are invalid because, even with consideration of his status as a habitual fourth offender, they exceed the statutory maximums.

(6) Did you receive a hearing where evidence was given on your motion?

**Yes**

If you did appeal, answer the following:

Name of court: **Michigan Court of Appeals**

Docket or case number (if you know): **COA #337903 & 337904**

Result: Denied oral arguments and affirmed all three convictions and sentences

Date of result (if you know **June 21, 2018**

Citation to the case (if you know): **People v Ware 2018 Mich. App. LEXIS 2721**

Grounds raised: **JUDICIAL FACT FINDING AT SENTENCING**

(1) Nature of the proceeding: **Appeals as of right the trial court's order entered after a Crosby remand hearing in the People v Ware 2018 Mich. App. LEXIS 2721.**

(2) Grounds raised:

On remand, defendant filed a motion for resentencing, and the trial court held a hearing. In addition to expressing their views about resentencing, the parties discussed the parameters of a Crosby remand, including that the sentencing guidelines were now only advisory. The trial court declined to resentence defendant.

(3) Result:

The Court articulated that, what made the guidelines unconstitutional, in other words, was the combination of the two mandates of judicial fact-finding and adherence to the guidelines. This combination was no longer extant at defendant's Crosby remand hearing. Although defendant's guidelines range was still based in part on judicial fact-finding, the trial court recognized that, under *Lockridge*, the guidelines range was only advisory. Therefore, the trial court did not err when it evaluated defendant's sentence using a guidelines range that was based on judicially found facts, given that the court was aware that the guidelines were only advisory.

(b) Did you seek further review by a higher state court? Yes (X) If yes, answer the following:

Name of court: **Michigan Supreme Court**

(4) Docket or case number (if you know): MSC: 158257-8

(5) Nature of the proceeding: Application for Leave to Appeal

(6) Grounds raised: **MR. WARE'S SENTENCES ARE DISPROPORTIONATE TO HIM AND THE OFFENSES AND ARE UNREASONABLE. HE IS ENTITLED TO RESENTENCING**

Result:

**Denied on the grounds that they were not persuaded that the questions raised should be reviewed by their court**

Date of result (if you know): September 27, 2016

(b) Citation to the case (if you know): **People v. Ware, 2019 Mich. LEXIS 1567**

For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

## GROUND ONE

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO FILE A TIMELY ALIBI NOTICE OR CALL A WITNESS WHOSE TESTIMONY WOULD HAVE SUPPORTED HIS ALIBI DEFENSE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the instant case, at the time of the September 27 incident and arrest several people were with Mr. Ware at a home in Highland Park. David Donnell Hughes specifically remembers being with Mr. Ware on the evening of September 27, in the hours leading up to his arrest in Mr. Hughes' presence. Id.

This alibi, however, was never presented to the trier of fact. Trial counsel was in no position to make any strategic decision to forgo an alibi defense, as she never spoke with Mr. Hughes prior to trial. See Appendix Offer of Proof and Affidavit. Although trial counsel did speak with other witnesses, Mr. Hughes would have testified and had a specific recollection

of Mr. Ware's whereabouts on September 27.

Most importantly, trial counsel never filed a notice of alibi, which is a prerequisite to raising an alibi defense pursuant to MCL 768.20(1). Mr. Hughes was listed on trial counsel's witness list, see Witness List, attached, but without having filed an alibi notice or even having spoken with Mr. Hughes, the decision not to call him was really no choice at all. Given these circumstances, trial counsel's failure to present alibi witnesses constituted ineffective assistance that denied Mr. Ware a fair trial.

**The facts and laws in support of this issue are fully set forth in the petitioner's memorandum of law which incorporated them by reference therein.**

(b) If you did not exhaust your state remedies on Ground One, explain why: **N/A**

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? **Yes**

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

**No**

(2) If your answer to Question (d)(1) is "Yes,"

state: Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): Date of ______________________

the court's decision: ______________________

Result (attach a copy of the court's opinion or order, if available): ______________________

______________________

______________________

(3) Did you receive a hearing on your motion or petition? ( ) Yes ( ) No

(4) Did you appeal from the denial of your motion or petition? ( ) Yes ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ( ) Yes ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: **N/A**

## GROUND TWO

WARE'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE WERE VIOLATED WHEN THE POLICE DEPARTMENT SEARCHED HIS CAR WITHOUT PROBABLE CAUSE UNDER THE PRETEXT OF AN INVENTORY SEARCH. IF RELIEF IS NOT WARRANTED AS PLAIN ERROR, THEN COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(f) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the instant case, the police searched Mr. Ware's vehicle without a warrant, testifying that they did so as part of an inventory search. The search, however, was not a valid inventory search and as such violated Mr. Ware's rights against unreasonable searches and seizures under both the Michigan and Federal constitutions. Warrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions. When valid, an inventory search is a recognized exception to the warrant requirement. The Supreme Court has made clear, however, that an inventory search must not be a deception for a general rummaging in order to discover incriminating evidence.

**The facts and laws in support of this issue are fully set forth in the petitioner's memorandum of law which incorporated them by reference therein.**

(g) If you did not exhaust your state remedies on Ground One, explain why: **N/A**

(h) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? **X** Yes ( ) No

(2) If you did not raise this issue in your direct appeal, explain why:

(i) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

( ) Yes **X** No

(2) If your answer to Question (d)(1) is "Yes,"

state: Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): Date of ______________________________

the court's decision: ______________________________

Result (attach a copy of the court's opinion or order, if available): ______________________________

______________________________

______________________________

(3) Did you receive a hearing on your motion or petition? ( ) Yes ( ) No

(4) Did you appeal from the denial of your motion or petition? ( ) Yes ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ( ) Yes ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

______________________________

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): ______________________________

______________________________

______________________________

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

**Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground Two: **N/A**

## GROUND THREE

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADIWSSION OF THE PERSONAL PROTECTION ORDER THE COIOLAINANT HAD FILED AGAINST MR. WARE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the instant case, testimony was admitted during trial that the complainant had a personal protection order (PPO) against Mr. ware. The actual PPO was admitted as evidence. Mr. Ware submits that the above evidence was improperly admitted and trial counsel was ineffective for failing to object.

The prosecutor here introduced and admitted the PPO in order to bolster Ms. Johnson's testimony. Ms. Johnson testified she obtained the PPO on September 10, 2013, three days after the first reported firebombing. Initially, the prosecutor used the PPO to refresh Ms. Johnson's memory about the sequence of events. However, the prosecutor admitted the PPO as evidence without any objection and used it to demonstrate that Ms. Johnson was afraid of Mr. Ware and to bolster her testimony. Mr. Ware was not served with the PPO until after he was arrested on September 27, 2013.

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403. Here, trial counsel rendered deficient performance when she failed to object to the admission of the PPO, given the high risk of unfair prejudice to Mr. Ware upon its admission.

**The facts and laws in support of this issue are fully set forth in the petitioner's memorandum of law which incorporated them by reference therein.**

(b) If you did not exhaust your state remedies on Ground One, explain why: **N/A**

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? X Yes ( ) No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

( ) Yes X No

(2) If your answer to Question (d)(1) is "Yes,"

state: Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): Date of ______

the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

______

______

(3) Did you receive a hearing on your motion or petition? ( ) Yes ( ) No

(4) Did you appeal from the denial of your motion or petition? ( ) Yes ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ( ) Yes ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

______

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): ______

______

______

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

**Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: **N/A**

## GROUND FOUR

MR. WARE'S SENTENCES ARE DISPROPORTIONATE TO HIM AND THE OFFENSES AND ARE UNREASONABLE. HE IS ENTITLED TO RESENTENCING

(e) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the instant case, Mr. Ware's sentences were unreasonable. The trial court denied resentencing because it was an outrageous case, there was a child present in the home who was likely frightened and because of Mr. Ware's criminal record. However, Mr. Ware was assessed a total of 80 Offense Variable points, and 135 Prior Record Variable points, which adequately accounted for all of the trial court's concerns. The facts of the offense were adequately accounted for in the guidelines, most notably as it relates to the 20-points score under OV 1, the 15-points score under OV 2, the 10-points score under OV 4, the 10-point score under OV 9, and the 15-points score under OV 10. Similarly, Mr. Ware's prior record was adequately accounted for in the scoring of PRV 1, PRV 2, PRV 5, and PRV 7.

In the instant petition the trial court determined that Mr. Ware's sentencing guidelines range was 117 months to 320 months, based on a total of 135 PRV points and 80 OV points. A 312-month minimum sentence (26 years) is disproportionate to Mr. Ware, given the mitigating factors that were unaccounted for, which include his serious mental illness and physical ailments, as well as the fact that because Mr. Ware is older, it is likely he will die in prison as a result of the 26-year minimum sentences. Based on the *Steanhouse* and *Milboum* factors, the sentences imposed against Mr. Ware were unreasonable.

**The facts and laws in support of this issue are fully set forth in the petitioner's memorandum of law which incorporated them by reference therein.**

(f) If you did not exhaust your state remedies on Ground One, explain why: **N/A**

(g) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? **X** Yes ( ) No

(2) If you did not raise this issue in your direct appeal, explain why:

(h) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

**X** No

(2) If your answer to Question (d)(1) is "Yes,"

state: Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): Date of ______________________

the court's decision: ______________________

Result (attach a copy of the court's opinion or order, if available): ______________________

______________________

______________________

(3) Did you receive a hearing on your motion or petition? ( ) Yes ( ) No

(4) Did you appeal from the denial of your motion or petition? ( ) Yes ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ( ) Yes ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

______________________

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): ______________________

______________________

______________________

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

**Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: **N/A**

(b) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two : **N/A**

12. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? **Yes** ( ) No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: __________

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

**N/A**

13. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ( ) Yes **No**

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

14. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? **No**

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: DON'T REMEMBER (**D/R**).

(b) At arraignment and plea: **D/R**

(c) At trial: **D/R**

(d) At sentencing: **D/R**

(e) On appeal: **State Appellate Defenders Office**

(f) O Remand: **State Appellate Defenders Office**

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? **No**

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: **N/A**

(c) Give the length of the other sentence: **N/A**

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? **Yes**

17. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**RELIEF SOUGHT**

For the reasons stated in this petition it should be presumed that the Petitioner has presented all claims raised in this petition in the state appellate courts, and therefore, he is entitled to review of his habeas petition on the merits, in the alternative, to grant such other relief as this Federal District Court deems just and fair under the circumstances outlined in this motion and supporting brief on the merits.

**DECLARATION OF SERVICE**

The petitioner certify under 28 USC 1746 that a copy of this document was served to all parties by U.S. Mail.

**SUBMITTED BY:**

Cornelius Ware

CORNELIUS WARE #196489

**DATED:** December 2, 2019

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CORNELIUS WARE**
Petitioner

U.S. DISTRICT #

vs

U.S.D.J.

**JOHN DAVIDS**, Warden
Respondent

U.S.M.J.

_______________________________/

ATTORNEY GENERAL DANA NESSEL
525 WEST OTTAWA STREET 7th Fl.
PO BOX: 30212
LANSING, MICHIGAN

CORNELIUS WARE #196489
IONIA CORRECTIONAL FACILITY
1576 WEST BLUEWATER HIGHWAY
IONIA, MICHIGAN 48846

_______________________________

**DECLARATION OF SERVICE**

**MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS RELIEF**

**By:** CORNELIUS WARE #196489
**In Pro Se**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..... iii

QUESTIONS PRESENTED ..... viii

SUMMARY OF FACTS FOR GRANTING THIS PETITION ..... 1

EXHAUSTION OF STATE REMEMDIES ..... 3

FEDERAL STANDARD OF REVIEW ..... 4

FEDERALIZATION ..... 6

ACTUAL INNOCENCE ANALYSIS ..... 7

**GROUNDS FOR GRANTING RELIEF**

**GROUND ONE**

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO FILE A TIMELY ALIBI NOTICE OR CALL A WITNESS WHOSE TESTIMONY WOULD HAVE SUPPORTED HIS ALIBI DEFENSE ..... 8

**ISSUE PRESERVATION** ..... 8

**STANDARD OF REVIEW** ..... 9

**FACTUAL AND LEGAL SYNOPSIS** ..... 9

**GROUND TWO**

WARE'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE WERE VIOLATED WHEN THE POLICE DEPARTMENT SEARCHED HIS CAR WITHOUT PROBABLE CAUSE UNDER THE PRETEXT OF AN INVENTORY SEARCH. IF RELIEF IS NOT WARRANTED AS PLAIN ERROR, THEN COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT ..... 13

**ISSUE PRESERVATION** ..... 13

**STANDARD OF REVIEW** ..... 14

**FACTUAL AND LEGAL SYNOPSIS** ..... 14

**GROUND THREE**

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADIWSSION OF THE PERSONAL PROTECTION ORDER THE COIOLAINANT HAD FILED AGAINST MR. WARE.................19

**ISSUE PRESERVATION**........................................................................................19

**STANDARD OF REVIEW**......................................................................................19

**FACTUAL AND LEGAL SYNOPSIS**......................................................................19

**GROUND FOUR**

MR. WARE'S SENTENCES ARE DISPROPORTIONATE TO HIM AND THE OFFENSES AND ARE UNREASONABLE. HE IS ENTITLED TO RESENTENCING.......................................22

**INTRODUCTION**..................................................................................................22

**ISSUE PRESERVATION**........................................................................................22

**STANDARD OF REVIEW**......................................................................................22

**FACTUAL AND LEGAL SYNOPSIS**......................................................................23

**RELEF SOUGHT**..................................................................................................28

**DECLARATION OF SERVICE**..............................................................................28

## INDEX OF AUTHORITIES

### SUPREME COURT CASES

Bousley v United States 523 US 614; 118 SC 1604 (1998)....8

Calderon v Thompson 523 US 538; 118 SC 1489 (1998)....8

Coleman v Thompson 501 US 722; 111 SC 2546 (1991)....8

Florida v Wells 495 US 1; 110 SC 1632 (1990)....14

Harrington v Richter 562 US 86; 131 SC 770 (2011)....5

Herrera v Collins 506 US 390; 113 SC 853 (1993)....7

Illinois v Lafayette 462 US 640; 462 SC 640 (1983)....14

Jackson v Virginia 443 US 307; 99 SC 2781 (1979)....6

Katz v United States 389 US 347; 88 SC 507 (1967)....14

Keeney v Tamayo-Reyes 504 US 1; 112 SC 1715 (1992)....7

Kimmelman v Morrisson 477 US 365, 383; 106 SC 2574 (1986)....10, 18, 20

Kuhlmann v Wilson 477 US 436; 106 SC 2616 (1986)....7

Lindh v Murphy 521 US 320, 333; 117 SC 2059 (1997)....5

Lockyer v Andrade 538 US 63; 123 SC 1166 (2003)....5

Lutwak v United States 344 US 604; 73 SC 481 (1953)....6

McCleskey v Zant 499 US 467; 111 SC 1454 (1991)....7

Miller-El v Cockrell 537 US 322; 123 SC 1029 (2003)....5

Murray v Carrier 477 US 478; 106 SC 2639 (1986)....7

Nix v Whiteside 477 US 478; 106 SC 2639 (1986)....12

Renico v Lett 559 US 766; 130 SC 1855 (2010)....5

Rita v United States 551 US 338; 127 SC 2456 (2007)....24

Sawyer v Whitley 505 US 333; 112 SC 2514 (1992)....7

South Dakota v Oppennan 428 US 364; 96 SC 3092 (1976)....15

Strickland v Washington 466 US 668; 104 SC 2052 (1984)....9, 14, 19

United States v Booker 543 US 220, 125 SC 738 (2005)....25

Wetzel v Lambert 565 US 520; 132 SC 1195 (2012)....5

Wiggins v Smith 539 US 510; 123 SC 2527 (2003)....10

Williams v Taylor 529 US 362; 120 SC 1495 (2000)....4

Woodford v Visciotti 537 US 19; 123 SC 357 (2002)....5

Yarborough v Alvarado 541 US 652; 124 SC 2140 (2004)....5

**FEDERAL CASES**

Franklin v Rose 811 F2d 322 (6th Cir 1987)....6

Henry v Scully 918 F Supp 693 (SD NY 1996)....10

United States v Crosby 397 F3d 103 (2nd Cir 2005)....3

Workman v Tate 957 F2d 1339 (6th Cir 1992)....12

**STATES CASES**

Dixon v State 327 A2d 516 (Md App 1974)....17

Granville v State 348 So 2d 641 (Fla App 1977)....17

Morton v State 452 So 2d 1361 (Ala Crim App 1984)....17

People Means 97 Mich App 641 (1980)....18

People v Ames 2017 Mich App Lexis 1311....3

People v Ames 501 Mich 1026 (2018)....22

People v Anderson 322 Mich App 622 (2018)....22

People v Bullock 440 Mich 15 (1992)....27

People v Carines 460 Mich 750 (1999)....13

People v Carrick 220 Mich App 17 (1996)....18

People v Dalessandro 165 Mich App 569 (1988) .......... 10

People v Davis 442 Mich 1 (1993) .......... 14

People v Ginther 390 Mich 436 (1973) .......... 3, 8, 14, 19

People v Grant 445 Mich 535 (1994) .......... 13

People v Henry 239 Mich App 140 (1999) .......... 8, 14, 19

People v Krezen 427 Mich 681 (1986) .......... 16

People v LaVearn 448 Mich 207 (1995) .......... 20

People v LeBlanc 465 Mich 575 (2002) .......... 9, 14, 19

People v Lockridge 498 Mich 358 (2015) .......... 2, 22

People v Long (On Rem) 419 Mich 636 (1984) .......... 15

People v Means 97 Mich App 641 (1980) .......... 18

People v Milbourn 435 Mich 630 (1990) .......... 23

People v Pickens 446 Mich 298 (1994) .......... 10, 17, 20

People v Reed 449 Mich 375 (1995 .......... 10, 20

People v Schrauben 314 Mich App 181 (2016) .......... 22

People v Sharp, 192 Mich App 501 (1992) .......... 24, 27

People v Stanaway 446 Mich 643 (1994) .......... 17

People v Steanhouse 313 Mich App 1 (2015) .......... 26

People v Steanhouse 500 Mich 453 (2017) .......... 23

People v Thomas 184 Mich App 480 (1990) .......... 18

People v Toohey, 438 Mich 265 (1991) .......... 15

People v Ullah 216 Mich App 669 (1996) .......... 12

People v Ware 2016 Mich App Lexis 609 .......... 3

People v Ware 2016 Mich Lexis 1992 .......... 3

People v Ware 2018 Mich App Lexis 2721 .......... 3, 26

People v Ware 2019 Mich Lexis 1567 .......... 3, 4

State v Osbon 426 so 2d 323 (La App 1983) .......... 16

Weed v Wainwright 325 So 2d 44 (Fla App 1976) .......... 17

**STATUTES**

28 USC §2254(d) .......... 4, 5

MCL 750.204(2)(b) .......... 2

MCL 750.411i(2)(a) .......... 2

MCL 750.73(1) .......... 2

MCL 750.84(1)(a) .......... 2

MCL 768.20 .......... 9, 11

MCL 769.12 .......... 2

MCL 769.34(10) .......... passim

MCL 769.34(2) .......... 23, 24

MCL 769.34(3) .......... 24

**RULES**

MCR 7.211 .......... 9, 11, 14, 19

MCR 7.215(E)(1) .......... 3

MCR 7.305(C)(7) .......... 3

**CONSTITUTIONAL PROVISIONS**

Mich Const of 1963 Art-1 §§17 & 20 .......... 10, 20

Mich Const of 1963 Art-1 §11 .......... 14

Mich Const of 1963 Art-1 §16 .......... 27

US Const Am VIII .......... 27

US Const Amends VI & XIV ........................................ 10, 14, 17, 20

**THE LIST OF APPENDIXES ARE BOUND SEPERATELY**

**WITH THIS PETITION**

## QUESTIONS PRESENTED

**QUESTION ONE**

DID TRIAL COUNSEL DEPRIVE MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FALNG TO FILE A TMELY ALIBI NOTICE OR CALL A WITNESS WHOSE TESTMONY WOULD HAVE SUPPORTED HIS ALIBI DEFENSE?

The State's Answer is "No".

The Petitioner's answer is "Yes".

**QUESTION TWO**

WERE MR. WARE'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE VIOLATED WHEN THE POLICE DEPARTNŒNT SEARCHED HIS CAR WITHOUT PROBABLE CAUSE UNDER THE PRETEXT OF AN INVENTORY SEARCH? IF RELIEF IS NOT WARRANTED AS PLAN ERROR, WAS COUNSEL THEN CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT?

The State's Answer is "No".

The Petitioner's answer is "Yes".

**QUESTION THREE**

DID TRIAL COUNSEL DEPRIVE MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADMISSION OF THE PERSONAL PROTECTION ORDER THE COMPLANANT HAD FILED AGAINST MR. WARE?

The State's Answer is "No".

The Petitioner's answer is "Yes".

**QUESTION FOUR**

ARE MR. WARE'S SENTENCES DISPROPORTIONATE TO HIM AND THE OFFENSES ARE UNREASONABLE ENTITLED HIM TO RESENTENCING?

The State's Answer is "No".

The Petitioner's answer is "Yes".

## SUMMARY OF FACTS FOR GRANTING THIS PETITION

This case centered on the events following the end of the romantic relationship between Cornelius Ware and Iris Johnson after a lengthy relationship marred by domestic violence where Iris Johnson broke up with defendant in the summer of 2013.[1] Displeased with this turn of events, the Defendant engaged in a harassing course of conduct, frequently telephoning Johnson and threatening to kill her family and blow up their residence. Johnson, who lived with her mother, siblings, and several nieces and nephews, feared for everyone's safety.[2] In July 2013, someone fired shots at her home, and in August, someone unsuccessfully attempted to firebomb the house on more than one occasion. Johnson did not report these incidents to the police.

On September 7, 2013, however, Johnson caught the Defendant in the act. As she sat on a porch across the street, Johnson observed two men approach her house. One was dressed all in black and threw a firebomb at the home. The second man dropped his firebomb on the lawn. As the men ran away, Johnson recognized the Defendant as the man in black. Johnson summoned the fire department and her friend burned his leg trying to assist the family. Following this incident, Johnson secured a personal protection order (PPO) against defendant but was unable to serve him with it until after his September 27 arrest.

On September 27, 2013, Johnson, her sister, and several nephews were sleeping in an upstairs bedroom. Someone threw a brick through a second-floor window centered above the home's staircase to the main floor. A firebomb followed the brick and caught the curtains on

---

[1] Transcript references are as follows: PT - April 29, 2014 Pretrial Hearing; T 1 - August 7, 2014 Trial; T 2 - August 11, 2014 Trial; T 3 - August 12, 2014 Trial; T 4 - August 13, 2014 Trial; ST - September 3, 2014 Sentencing Hearing; MH Post-Conviction Motion Hearing February 16, 2017.

[2] Mother: Darlene Pollard; Brothers: Isaac Johnson and Seneca Pollard; Nephews: Montez Pollard, Vandez Pollard, Martez Pollard, and Michael Adkins. (T II 66-67).

fire. Someone threw a second firebomb at the home's back door. The women and children were forced to skirt fire and smoke to descend the stairwell, their only means of escape. Johnson did not observe defendant at the home that day but based on the prior incident and his many threats, Johnson identified defendant as the likely perpetrator. She described the Defendant and his vehicle, a white van, to the responding officers. Johnson's sister did observe defendant standing in the yard, however. The officers found two additional unused "Molotov cocktails" in the backyard.

Based on information provided by Johnson, Detroit police officers travelled to a home on Waverly Street in Detroit. The Defendant was standing outside, talking on a cell phone. Upon seeing the police, defendant tried to go into the house but the occupants denied him entry. The Defendant told the officers that he had been at the Waverly Street address all day, leaving only briefly on foot to purchase gasoline. However, the Defendant could not produce the container that he had allegedly filled and the Defendant smelled strongly of gas. The police impounded defendant's van which was parked in the street outside the house. Inside, they found a shotgun and two shotgun shells.

A jury convicted defendant of sending or delivering an explosive substance with the intent to injure a person or destroy property, MCL 750.204(2)(b), second-degree arson, MCL 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), aggravated stalking, MCL 750.411i(2)(a), and felon in possession of a firearm, MCL 750.224f, for firebombing his ex-girlfriend's family's residence on two separate occasions in September 2013. The court sentenced the Defendant as a fourth habitual offender, MCL 769.12, to 26 to 50 years' imprisonment for each conviction. The Defendant raises several challenges to trial counsel's performance and to his sentences on direct appeal who affirmed the Defendant's convictions but remanded for a *People v Lockridge 498 Mich 358 (2015)*

pursuant to *United States v Crosby 397 F3d 103 (2nd Cir 2005)* and *People v Ware 2016 Mich App Lexis 609* for an evidentiary hearing regarding his trial counsel's effectiveness pursuant to *People v Ginther 390 Mich 436 (1973)*. While his case was pending on remand, the Petitioner appealed his remaining three claims to the Michigan Supreme Court asking the court to either grant leave to appeal or in the alternative to remand these issues to the trial court for the same *Ginther* hearing on remand by the Michigan Court of Appeals which was denied in the *People v Ware 2016 Mich Lexis 1992* on September 27, 2016 MSC #153735-6.

On remand, the judge denied resentencing finding that if the guidelines had been rescored, he would have imposed the same sentence. (MH 5-7). Mr. Ware appealed by right, and the Court of Appeals affirmed the denial of resentencing. See *People v Ware 2018 Mich App Lexis 2721* issued June 21, 2018 (COA ##337903 & 337904).

Mr. Ware appealed by leave and asked the Michigan Supreme Court to remand his case to the Court of Appeals for a proportionality review of his sentences or hold this case in abeyance pending the outcome of *People v Ames 2017 Mich App Lexis 1311* which was denied in the *People v Ware 2019 Mich Lexis 1567* on September 10, 2019 MSC #158257-8.

The petitioner did not seek a Writ of Certiorari to the U.S.S.C. following the exhaustion of his claims raised in this petition but instead filed the instant Habeas petition in the federal courts for the reasons outlined herein.

**EXHAUSTION OF STATE REMEMDIES**

The state may argue that some of the Petitioner's claims are procedurally defaulted would be a misrepresentation of Michigan's procedural ru;es regarding case on remand by the Michigan Appellate Courts. For example, pursuant to MCR 7.305(C)(7) if a party appeals a decision that remands for further proceedings as provided in sub-rule (C)(6)(a), the following provisions apply: <u>If the Court of Appeals decision is a judgment under MCR 7.215(E)(1), an</u>

application for leave to appeal stays proceedings on remand unless the Court of Appeals or the Supreme Court orders otherwise. In the instant petition the Petitioner direct appeal to the Michigan Appellate courts was not deemed dispose on direct appeal by order of a remand. As such, the Petitioner's claims all became exhausted pursuant to 28 USCS §2244 finality of determination when the Michigan Supreme Court issued its final ruling after remand in the *People v Ware 2019 Mich Lexis 1567* on September 10, 2019. The Petitioner now seeks a Writ of Habeas Corpus 28 USCS §2254 for the reasons outlined herein.

**FEDERAL STANDARD OF REVIEW**

28 USC §2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v Taylor 529 US 362, 405-06; 120 SC 1495 (2000)*. An unreasonable application occurs when a state court decision unreasonably applies the law of the Supreme Court to the facts of a prisoner's case. Id. at 409. A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Id. at 410-11.

The Supreme Court has explained that a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. *Miller-El v Cockrell 537 US 322, 340; 123 SC 1029 (2003).* The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and 'demands that state-court decisions be given the benefit of the doubt. See *Renico v Lett 559 US 766, 773; 130 SC 1855 (2010)* (quoting *Lindh v Murphy 521 US 320, 333, n. 7; 117 SC 2059 (1997); Woodford v Visciotti 537 US 19, 24; 123 SC 357 (2002).* A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair minded jurists could disagree on the correctness of the state court's decision. See *Harrington v Richter 562 US 86, 101; 131 SC 770 (2011)* (citing *Yarborough v Alvarado 541 US 652, 664; 124 SC 2140 (2004).* The Supreme Court has emphasized that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. Id. at 102 (citing *Lockyer v Andrade 538 US 63, 75; 123 SC 1166 (2003).* Furthermore, pursuant to § 2254(d) a habeas court must determine what arguments or theories supported or could have supported the state court's decision and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Id. Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. See *Wetzel v Lambert 565 US 520; 132 SC 1195, 1199 (2012).*

If this standard is difficult to meet that is because it was meant to be. See *Harrington* ibid 562 US at 102. Although 28 USC §2254(d), as amended by the AEDPA does not completely bar federal courts from relitigating claims that have previously been rejected in the

state courts it preserves the authority for a federal court to grant habeas relief only in cases where there are no possibility fair minded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Id. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. Id. at 102-03 citing *Jackson v Virginia 443 US 307, 332, n. 5; 99 SC 2781 (1979)*. Thus, a readiness to attribute error to a state court is inconsistent with the presumption that state courts know and follow the law. See *Woodford* supra 537 US at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement. See *Harrington* supra 562 US at 103. In reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was entitled to a fair trial but not a perfect one. See *Lutwak v United States 344 US 604, 619; 73 SC 481 (1953)*. In this petition the Petitioner would argue that his jury trial was neither fair nor perfect.

**FEDERALIZATION**

A petitioner fairly presents his claim to the state courts by citing a provision of the constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. See *Franklin v Rose 811 F2d 322, 326 (6th Cir 1987)*. The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim even without citing chapter and verse of the constitution includes: **(a)** reliance on pertinent federal cases employing constitutional analysis, **(b)** reliance on state cases employing constitutional analysis in like fact situations, **(c)** assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and **(d)** allegation of a pattern of facts well within the mainstream of constitutional litigation.

**ACTUAL INNOCENCE ANALYSIS**

A plea of actual innocence can overcome many federal limitations regarding the significance of a convincing actual-innocence claim. The United States Supreme Court stated that we have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. See *Herrera v Collins 506 US 390, 404-405; 113 SC 853 (1993).* The Supreme Court stated however, that we have recognized that a prisoner otherwise subject to defenses of abusive or successive use of the writ of habeas corpus may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence. Id. at 404, 113 SC 853 citing *Sawyer v Whitley 505 US 333; 112 SC 2514 (1992)* see also *Murray v Carrier 477 US 478, 496; 106 SC 2639 (1986)* (**we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default**). In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, on the claim raised in this petition) on the merits notwithstanding the existence of a procedural bar to relief. This rule or fundamental miscarriage of justice exception is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons. See *Herrera* supra 506 US at 404. The United States Supreme Court has applied the miscarriage of justice exception to overcome various defaults, these include, successive petitions asserting previously rejected claims, see *Kuhlmann v Wilson 477 US 436, 454; 106 SC 2616 (1986)*; abusive petitions asserting in a second petition claims that could have been raised in a first petition, see *McCleskey v Zant 499 US 467, 494-495; 111 SC 1454 (1991)*; failure to develop facts in state court, see *Keeney v Tamayo-Reyes 504 US 1, 11-12; 112 SC 1715 (1992)*; and failure to observe state procedural rules including

filing deadlines, see *Coleman v Thompson 501 US 722, 750; 111 SC 2546 (1991)*; Carrier 477 US at 495-496. The miscarriage of justice exception, our decisions bear out, survived AEDPA's passage. In *Calderon v Thompson 523 US 538; 118 SC 1489 (1998)* applied the exception to hold that a federal court may consistent with AEDPA recall its mandate in order to revisit the merits of a decision. Id. at 523 US 558 (**The miscarriage of justice standard is altogether consistent with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence**). In *Bousley v United States 523 US 614, 622 118 SC 1604 (1998)* the court that an actual innocence claim may even overcome a prisoner's failure to raise a constitutional objection on direct review. In *House v Bell 547 US 518; 126 SC 2064 (2006)* the court reiterated that a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error. Id. 547 US at 537-538.

## GROUNDS FOR GRANTING RELIEF

## GROUND ONE

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO FILE A TIMELY ALIBI NOTICE OR CALL A WITNESS WHOSE TESTIMONY WOULD HAVE SUPPORTED HIS ALIBI DEFENSE

### ISSUE PRESERVATION

A claim of ineffective assistance of counsel may be presented for the first time on appeal because it involves a constitutional error which likely affected the trial's outcome. See *People v Henry 239 Mich App 140, 146 (1999)*. But a defendant who wishes to advance claims that depend on matters not of record must first seek an evidentiary hearing in the trial court. See *People v Ginther 390 Mich 436, 443 (1973)*. This claim relies upon evidence that is not yet part of the record below. See infra. Accordingly, Mr. Ware filed a concurrent motion to remand

seeking to further develop the record in a hearing pursuant to _Ginther_ and MCR 7.211 which was denied.

**STANDARD OF REVIEW**

The performance and prejudice components of an ineffective assistance of counsel claim are mixed questions of law and fact subject to de novo review. See *Strickland v Washington 466 US 668, 698; 104 SC 2052 (1984); People v LeBlanc 465 Mich 575, 579 (2002).*

**FACTUAL AND LEGAL SYNOPSIS**

At the time of the September 27 incident and arrest several people were with Mr. Ware at a home in Highland Park. (TT 4, 44, 60-62); Appendix and Offer of Proof: Affidavit, attached. David Donnell Hughes specifically remembers being with Mr. Ware on the evening of September 27, in the hours leading up to his arrest in Mr. Hughes' presence. Id.

This alibi, however, was never presented to the trier of fact. Trial counsel was in no position to make any strategic decision to forgo an alibi defense, as she never spoke with Mr. Hughes prior to trial. See Appendix Offer of Proof and Affidavit. Although trial counsel did speak with other witnesses, Mr. Hughes would have testified and had a specific recollection of Mr. Ware's whereabouts on September 27. Id.

Most importantly, trial counsel never filed a notice of alibi, which is a prerequisite to raising an alibi defense. See MCL 768.20(1). Mr. Hughes was listed on trial counsel's witness list, see Witness List, attached, but without having filed an alibi notice or even having spoken with Mr. Hughes, the decision not to call him was really no choice at all. Given these circumstances, trial counsel's failure to present alibi witnesses constituted ineffective assistance that denied Mr. Ware a fair trial. He was therefore entitled to a _Ginther_ hearing and ultimately, a new trial.

A criminal defendant's constitutional right to counsel encompasses the right to effective assistance of counsel. US Const Amends VI & XIV; Mich Const of 1963 Art-1 §§17 & 20; _Strickland_ supra 466 US at 686; *People v Pickens 446 Mich 298 (1994)*. An ineffectiveness claim is not necessarily a referendum on an attorney's overall performance at trial. A "**single, serious error**" may support a claim of ineffective assistance of counsel. See *Kimmelman v Morrisson 477 US 365, 383; 106 SC 2574 (1986)* see also *People v Reed 449 Mich 375 (1995)*. To establish ineffectiveness, the defendant must show: **(1)** that counsel's performance fell below an objective standard of reasonableness; and **(2)** that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different. _Strickland_ supra 466 US at 694; see also *People v LaVearn 448 Mich 207, 216 (1995)*. Both prongs have been satisfied in the instant petition.

**A.** Trial counsel performed deficiently when she failed to file an alibi notice or call witnesses in support of Mr. Ware's alibi.

To establish deficient performance, the defendant must overcome the presumption that trial counsel's actions were based on reasonable trial strategy. See _Strickland_ supra 466 US at 694. However, merely labeling counsel's errors strategy does not shield his performance from Sixth Amendment scrutiny. See *Henry v Scully 918 F Supp 693, 715 (SD NY 1996) affd 78 F3d 51 (CA 2 1996)*. Counsel will still be found ineffective despite a strategic decision if the strategy employed was not a sound or reasonable one. See *People v Dalessandro 165 Mich App 569, 574 (1988)*. In particular, counsel's behavior cannot be considered objectively reasonable if her strategy is predicated on inadequate preparation.

In reviewing whether counsel exercised reasonable professional judgment, the question is not whether counsel should have called a particular witness. See *Wiggins v Smith 539 US 510, 523-24; 123 SC 2527 (2003)*. Rather, we focus on whether the investigation supporting

counsel's decision was itself reasonable. Id at 524 (emphasis in original). In other words, the deference owed to counsel's decision varies depending on the adequacy of the investigation supporting that decision:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. See *Strickland* supra 466 US at 690-691.

In sum, a decision not to call a particular witness based on less than adequate investigation is not based on strategic considerations.

Here, the existing record does not fully disclose trial counsel's reasons for failing to call witnesses in support of Mr. Ware's defense. Based on email exchanges between trial counsel and appellate counsel was anticipated that counsel would testify that she tried to call Mr. Hughes but his phone number was not in service and that two other potential alibi witnesses did not appear to have promising testimony to offer in support of Mr. Ware's alibi. See Appendix and Offer of Proof: Affidavit. Counsel may have an explanation for how she planned to present the alibi witnesses despite her failure to provide the notice required by MCL 768.20 given that she had listed several potential alibi witnesses on the witness list.

Mr. Hughes would testify that he had no contact with counsel prior to trial. See Appendix Offer of Proof and Affidavit. This proffer, coupled with the absence of an alibi notice, establishes that the decision not to call Mr. Hughes was the product of inadequate preparation, as opposed to a tactical choice. For all of these reasons, Mr. Ware requested a remand to the trial court for an evidentiary hearing pursuant to *Ginther* and MCR 7.211(C)(I).

**B.** Mr. Ware suffered prejudice from trial counsel's failure to investigate and present alibi witnesses.

As for the second prong of Strickland, a defendant is not required to prove that his trial attorney's conduct more likely than not altered the outcome of the case. See _Strickland_ supra 466 US at 693; see also *Nix v Whiteside 477 US 478; 106 SC 2639 (1986); Workman v Tate 957 F2d 1339, 1346 (6th Cir 1992)*. Rather, the defendant need only show a reasonable probability that absent the errors, the outcome may have been different. See _Strickland_ supra 466 US at 694; see also *People v Ullah 216 Mich App 669, 684 (1996)*. Mr. Smith has met that threshold.

The prejudice inquiry focuses upon two factors: **(1)** the effect of the error involved; and **(2)** the strength or weakness of the case against the defendant. As the _Strickland_ Court explained, certain errors are more harmful than others. See Strickland supra 466 US at 695. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Id at 695-696. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Id. at 696.

Here, the prosecution's case against Mr. Ware rested on a credibility battle between Mr. Ware and the complainant's family, as there was no physical evidence of Mr. Ware's involvement. Mr. Ware's fingerprints were not found on the recovered Molotov cocktail. (TT 3, 71, 77-78). The cell phones recovered from Mr. Ware were destroyed in a flood. (TT 4, 3-5). Highly inflammatory evidence of a personal protection order, which was not served on Mr. Ware until 20 days after it was filed, was admitted without objection and bolstered the complainant's testimony. See Part m, infra. Because there was no physical evidence, the prosecution's case hinged entirely upon the identification testimony of the complainant and her sister.

Given these weaknesses in the prosecution's case, the alibi testimony would have had a major impact on the trial court's factual findings. Mr. Hughes would have testified that he was with Mr. Ware for a majority of the day on September 27, and were only apart for a portion of the afternoon, well before the incident. See Appendix Offer of Proof and Affidavit. Mr. Hughes would have testified that he was with Mr. Ware when the police came to Waverly Road and that he had been with him prior to the police arriving (i.e. **during the time of the firebombing**). Id. Mr. Hughes would have confirmed, consistent with Mr. Ware's testimony, that Mr. Hughes borrowed Mr. Ware's white van during the day of September 27. Id.

In addition, Mr. Ware testified at trial and mentioned he had alibi witnesses. The prosecutor noted the lack of corroboration in his closing argument. (TT 4, 71).

Given these circumstances, trial counsel's failure to present alibi witnesses constituted ineffective assistance that denied Mr. Ware a fair trial. Therefore, he is entitled to an evidentiary hearing and ultimately, a new trial.

## GROUND TWO

WARE'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE WERE VIOLATED WHEN THE POLICE DEPARTMENT SEARCHED HIS CAR WITHOUT PROBABLE CAUSE UNDER THE PRETEXT OF AN INVENTORY SEARCH. IF RELIEF IS NOT WARRANTED AS PLAIN ERROR, THEN COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT

### ISSUE PRESERVATION

Michigan Appellate Courts will review a violation of important constitutional rights for plain error. See *People v Grant 445 Mich 535, 547 (1994); People v Carines 460 Mich 750, 774 (1999)*.

A claim of ineffective assistance of counsel may be presented for the first time on appeal because it involves a constitutional error which likely affected the trial's outcome. See *People*

*v Henry 239 Mich App 140, 146 (1999)*. But a defendant who wishes to advance claims that depend on matters not of record must first seek an evidentiary hearing in the trial court. See *People v Ginther 390 Mich 436, 443 (1973)*. Accordingly, Mr. Ware filed a concurrent motion to remand seeking to further develop the record in a hearing pursuant to *Ginther* and MCR 7.211 which was denied.

**STANDARD OF REVIEW**

The performance and prejudice components of an ineffective assistance of counsel claim are mixed questions of law and fact subject to de novo review. See *Strickland v Washington 466 US 668, 698; 104 SC 2052 (1984); People v LeBlanc 465 Mich 575, 579 (2002)*.

**FACTUAL AND LEGAL SYNOPSIS**

The police searched Mr. Ware's vehicle without a warrant, testifying that they did so as part of an inventory search. The search, however, was not a valid inventory search and as such violated Mr. Ware's rights against unreasonable searches and seizures under both the Michigan and Federal constitutions. US Const Am IV; Mich Const of 1963 Art-1 §11. Warrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. See *Katz v United States 389 US 347, 357; 88 SC 507 (1967)*; see also *People v Davis 442 Mich 1, 10 (1993)*. When valid, an inventory search is a recognized exception to the warrant requirement. See *Illinois v Lafayette 462 US 640, 643; 462 SC 640 (1983)*. The Supreme Court has made clear, however, that an inventory search must not be a deception for a general rummaging in order to discover incriminating evidence. See *Florida v Wells 495 US 1, 4; 110 SC 1632 (1990)*.

The record here shows that the purported inventory search was, in fact, not an inventory search at all, but instead a discretionary search for evidence of crime and the very sort of

deception forbidden by the Fourth Amendment. Though the Fourth Amendment permits the police to make a warrantless inventory searches of an impounded vehicle, a search qualifies as an inventory search only if it is one made routinely under established police policy and according to established police procedures. See *People v Long (On Rem) 419 Mich 636, 647 (1984); People v Toohey, 438 Mich 265, 271-72 (1991); see also South Dakota v Oppennan, 428 US 364; 96 SC 3092 (1976).* The inventory exception permits the police to inventory the contents of impounded vehicles as a means to protect against both loss and litigation. See Long supra at 648. The exception is available so long as police policy permits it and the search is conducted according to established procedure. Id. at 647-48. The search must be one that is made routinely, not one that depends on the exercise of discretion by an individual police officer. Id. An inventory search is assuredly not a search for evidence ordered by an officer exercising individual discretion while hunting for evidence of crime. Id.

Officer White testified that the white van near where Mr. Ware was arrested matched the description of the van that we were told by the complainants at the scene. (TT 3, 62; TT 4, 11, 19). Mr. Ware told the officer that he drove the van. (TT 3, 70). He "ran it through lien" and learned it was registered to Mr. Ware. (TT 3, 62). The police then impounded the van and towed it. (TT 3, 62). Officer White testified that they performed an inventory search to see exactly what's inside the van so it won't be any type of discrepancy if they said they had a radio in there and there's not one in there. (TT 3, 63). Officer White did not search the van himself. (TT 3, 63).

When Officer Ochs arrived at the scene where Mr. Ware was arrested, Mr. Ware was in handcuffs and Officer Ochs began to question him. (TT 4, 12-13). Once Mr. Ware was arrested and in the back of the police car, Officer Ochs testified that Mr. Ware told them that his van was parked in the street and he kept referencing it so we decided it was his van, [the police] decided

to tow the van for safekeeping for Mr. Ware. (TT 4, 14). Officer Ochs further testified that we just towed it to the impound lot so that it's in our custody so nothing will happen to it. (TT 4, 12). He further stated that he requested that his partner search the vehicle just to see what's in there. It's department policy we do inventory search on all towed vehicles. (TT 4, 15). A shotgun was retrieved from the vehicle. (TT 3, 63-65; TT 4, 16). The van was legally parked and Mr. Ware did not ask the officers to tow the van. (TT 4, 23).

There was no evidence presented at trial as to what the actual Highland Park Police Department policies were with regards to vehicle impoundment or how inventory searches are to be conducted. In fact, the officer who actually performed the inventory search did not testify. Officer White testified that they did an inventory search to see exactly what's inside the van. (TT 3, 63). Officer Ochs testified similarly that they searched the vehicle as an inventory search just to see what's in there. (TT 4, 15). With regards to department policy, Officer Ochs merely indicated that it's department policy we do inventory search on all towed vehicles. (TT 4, 15). The testimony of the officers indicates a very vague policy regarding the impoundment of vehicles and gives unfettered discretion to police officers regarding inventory searches. While a certain level of discretion for police officers is acceptable, that discretion cannot be "un canalized". See _Wells_ supra 495 US at 4.

Both officers testified they towed the van for its safekeeping. However, the impoundment of cars under the community caretaking function is not appropriate. Courts have often said that impoundment is ordinarily unlawful where the vehicle is legally parked. See *People v Krezen 427 Mich 681, 710 (1986)*; see also *State v Osbon 426 so 2d 323 (La App 1983)* **(impoundment unreasonable where vehicle parked in shopping center lot)**; *Granville v State 348 So 2d 641 (Fla App 1977)* **(improper impoundment where vehicle parked in friend's driveway and defendant was arrested at a safe distance from the vehicle)**; *Morton*

*v State 452 So 2d 1361 (Ala Crim App 1984)* (**impoundment unreasonable where vehicle parked in service station**); *Weed v Wainwright 325 So 2d 44, 45 (Fla App 1976)* (**impoundment improper where arrestee's vehicle parked in store parking lot**); *Dixon v State 327 A2d 516 (Md App 1974)* (**necessity for impounding vehicle not demonstrated where vehicle was in public parking lot at time of arrest**).

The error here is and was plain. The police did not have a warrant to search the van and the inventory search exception did not apply as the police were using the inventory search exception as a mere ruse to search the vehicle in question. Mr. Ware was denied his fundamental constitutional right to be free from unreasonable searches and seizures. Admission of the unlawfully obtained evidence affected the fairness of the judicial proceedings in this case and therefore, Mr. Ware should be granted a new trial.

Alternatively, Mr. Ware was denied effective assistance of counsel when his trial counsel failed to challenge the unlawfully obtained evidence. Both the Michigan and Federal Constitutions guarantee a criminal defendant the right to the effective assistance of counsel. US Const Amends VI & XIV; Mich Const of 1963 Art-1 §20. A defendant has received ineffective assistance of counsel and is entitled to reversal of his or her conviction when counsel's performance was deficient and the deficient performance prejudiced the defense. See *People v Pickens 446 Mich 298 (1994)* (adopting Strickland prejudice standard).

Trial counsel failed to move to suppress the firearm obtained as a result of the illegal search of the vehicle. Counsel's performance is deficient if it falls below an objective standard of reasonableness under prevailing professional norms. See *People v Stanaway 446 Mich 643, 687 (1994)*. One way in which counsel performs deficiently is by failing to seek suppression of evidence obtained as the result of an illegal search or seizure. See *People v Thomas 184 Mich App 480, 481-82 (1990); People Means 97 Mich App 641, 645-46 (1980)*.

Mr. Ware's trial counsel should have challenged the unconstitutional search. The officers conducted the inventory search as a mere ruse to search the van without a warrant. Counsel makes a serious mistake within the meaning of the first _Strickland_ prong whenever she fails to advance an argument, supported in the record, which could have prevented her client's conviction. See *People v Carrick 220 Mich App 17, 22 (1996)*. Both State and Federal Courts has found ineffective assistance of counsel for failing to advance an argument even when the record provides only conflicting support for it. See _Thomas_ at 482; see also *People v Means 97 Mich App 641 (1980)* (on remand).

Failing to seek suppression of the gun that formed the basis for felon in possession charge could never be deemed strategic. There was no strategic reason why counsel would not seek to suppress the gun seized by the police. See *Kimmelman v Morrison 477 US 365, 384-85; 106 SC 2574 (1986)* (representation amounted to ineffective assistance of counsel where attorney failed to file suppression motion). The first _Strickland_ prong is met.

Mr. Ware was prejudiced by the admission of the illegally obtained evidence in this case. Prejudice has occurred when there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. See _Stanaway_ 446 Mich at 687-88; see also _Pickens_ 466 Mich at 326. Without the gun, Mr. Ware could not have been convicted of the felon in possession count. Furthermore, by not challenging the search, trial counsel was forced to stipulate, and present to the jury, that Mr. Ware had been convicted of a prior listed felony. (TT 4, 25). This likely tainted the entirety of the trial. Counsel's deficient performance was therefore outcome determinative.

Whether examined as plain error or ineffective assistance of counsel, Mr. Ware is entitled to have his conviction for felon in possession vacated and a new trial without the illegally seized evidence.

## GROUND THREE

TRIAL COUNSEL DEPRIVED MR. WARE OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE ADIWSSION OF THE PERSONAL PROTECTION ORDER THE COIOLAINANT HAD FILED AGAINST MR. WARE

### ISSUE PRESERVATION

A claim of ineffective assistance of counsel may be presented for the first time on appeal because it involves a constitutional error which likely affected the trial's outcome. See *People v Henry 239 Mich App 140, 146 (1999)*. But a defendant who wishes to advance claims that depend on matters not of record must first seek an evidentiary hearing in the trial court. See *People v Ginther 390 Mich 436, 443 (1973)*. This claim relies upon evidence that is not yet part of the record below. Accordingly, Mr. Ware filed in the state appellate courts a concurrent motion to remand seeking to further develop the record in a hearing pursuant to *Ginther* and MCR 7.211 which was denied.

### STANDARD OF REVIEW

The performance and prejudice components of an ineffective assistance of counsel claim are mixed questions of law and fact subject to de novo review. See *Strickland v Washington 466 US 668, 698; 104 SC 2052 (1984); People v LeBlanc 465 Mich 575, 579 (2002).*

### FACTUAL AND LEGAL SYNOPSIS

Testimony was admitted during trial that the complainant had a personal protection order (PPO) against Mr. ware. (TT 2, 76). The actual PPO was admitted as evidence. (TT 2, 76-77) and PPO Appendix. Mr. Ware submits that the above evidence was improperly admitted and trial counsel was ineffective for failing to object.

A criminal defendant's constitutional right to counsel encompasses the right to effective assistance of counsel. US Const Amends VI & XIV; Mich Const of 1963 Art-1 §§17 & 20; _Strickland_ supra 466 US at 686; *People v Pickens 446 Mich 298 (1994).* An ineffectiveness claim is not necessarily a referendum on an attorney's overall performance at trial. A single, serious error may support a claim of ineffective assistance of counsel. See *Kimmelman v Morrisson 477 US 365, 383; 106 SC 2574 (1986)* see also *People v Reed 449 Mich 375 (1995).* To establish ineffectiveness, the defendant must show: **(1)** that counsel's performance fell below an objective standard of reasonableness and **(2)** that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different. See _Strickland_ supra 466 US at 694; see also *People v LaVearn 448 Mich 207, 216 (1995).* Both prongs have been satisfied in the instant case.

Trial counsel's failure to object to inadmissible evidence can be constitutionally ineffective assistance warranting a new trial where the deficient performance deprived the defendant of a fair trial. See generally _Strickland v Washington_ supra; _People v Pickens_ supra; see also *Northrop v Trippett 265 F3d 372 (6th Cir 2001).*

Mr. Ware submits that trial counsel's failure to object to the admission of the PPO fell below an objective standard of reasonableness and prejudiced his defense.

The prosecutor here introduced and admitted the PPO in order to bolster Ms. Johnson's testimony. Ms. Johnson testified she obtained the PPO on September 10, 2013, three days after the first reported firebombing. (TT 2, 77). Initially, the prosecutor used the PPO to refresh Ms. Johnson's memory about the sequence of events. (TT 2, 77-78). However, the prosecutor admitted the PPO as evidence without any objection and used it to demonstrate that Ms. Johnson was afraid of Mr. Ware and to bolster her testimony. (TT 2, 78). Mr. Ware was not served with the PPO until after he was arrested on September 27, 2013 (TT 4, 23-24).

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403. Here, trial counsel rendered deficient performance when she failed to object to the admission of the PPO, given the high risk of unfair prejudice to Mr. Ware upon its admission. All testimony by Mr. Ware and police witnesses alike proved that Mr. Ware did not know about this PPO until after his arrest on September 27. In addition, the unfair prejudice was not stemmed by a cautionary instruction, as the trial court did not provide, nor did counsel ask for a limiting instruction.

The prejudice to Mr. Ware from the failure of his trial counsel to object to the PPO is clear. The prosecutor relied on the PPO in closing to bolster the testimony of Ms. Johnson who stated that: She's the one that went and got the PPO order and went to Court and asked for protection from him. He said, well, I wasn't served. She - and the purpose of the PPO order for you seeing it is she went to a court to say I want him to stay away from me. (TT 4, 72).

Trial counsel attempted to mitigate the prejudice flowing from the admission of the PPO in her closing argument by stating: Well, Mr. Ware wasn't served with the PPO until he was arrested. Until it was convenient for Mrs. Johnson to say well, look I got a PPO against this man but he never knew about it. He was never served with it. He didn't know that she had went and got a PPO. And what you will see on the PPO is yes she went to the Court and asked for protection but Mr. Ware knew nothing of it. There was no hearing. (TT 4, 77). By closing, however, the damage had been done and the PPO likely cemented in the jury's minds that Ms. Johnson was telling the truth and had a signed court order to back up her claims.

Given these circumstances, trial counsel's failure to object to the admission of the PPO constituted ineffective assistance that denied Mr. Ware a fair trial. Therefore, he is entitled to an evidentiary hearing and ultimately, a new trial.

## GROUND FOUR

MR. WARE'S SENTENCES ARE DISPROPORTIONATE TO HIM AND THE OFFENSES AND ARE UNREASONABLE. HE IS ENTITLED TO RESENTENCING

### INTRODUCTION

Mr. Ware acknowledges that his sentences fall within the controlling guidelines range. He further acknowledges that MCL 769.34(10) bars resentencing absent a showing that the trial court erred in scoring the guidelines variables or otherwise relied upon inaccurate information. See *People v Schrauben 314 Mich App 181, 196 (2016)*. And, courts are only pequiped to review sentences that depart from the sentencing guidelines. See *People v Anderson 322 Mich App 622 (2018)*.

This does not mean the Court is not permitted to review such sentences. Neither *Schraztben* nor *Anderson* address whether MCL 769.34(10) survives the state's court ruling in *People v Lockridge 498 Mich 358 (2015)*. The constitutionality of MCL 769.34(10) has not yet been addressed by in the state courts but the Michigan Supreme Court has ordered oral argument on this precise issue. See *People v Ames 501 Mich 1026 (2018)*.

### ISSUE PRESERVATION

While the state appellate courts have not articulated a preservation requirement for challenging the proportionality of a sentence falling within the guidelines range, Mr. Ware moved for resentencing in the trial court but the trial court denied resentencing in an order from the bench. (MH 7).

### STANDARD OF REVIEW

The standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion. See *People v Steanhouse 500 Mich 453, 471 (2017)*. A given sentence can be said to constitute an abuse of discretion if that sentence

violates the principle of proportionality which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *People v Milbourn 435 Mich 630 (1990).*

**FACTUAL AND LEGAL SYNOPSIS**

**A.** Historically, Milbourn review has always included a mechanism for allowing defendants to rebut the presumption that a sentence within the controlling guidelines range is proportionate. MCL 769.34(10) violates the rule of *Lockridge* by precluding defendants from challenging disproportionate sentences that happen to fall within a guidelines range calculated through the use of facts found by a judge, not a jury.

Before the state's decision in Lockridge, the legislative sentencing guidelines were binding upon trial judges. See Lockridge supra 498 Mich at 387 (citing MCL 769.34(2)). Lockridge held unconstitutional the portion of the guidelines that made them mandatory and replaced it within an advisory scheme. Id at 364, 387-389, 391-392. After Lockridge, sentencing courts still must determine the applicable guidelines range and take it into account when imposing sentence. Id. at 365. But courts need not articulate substantial and compelling reasons for departing above or below that range, rather, the sentence only has to be reasonable. Id at 392.

Even after Lockridge, a sentencing court must justify its sentence in order to facilitate appellate review. Id. Appellate courts then review for reasonableness. Id at 392. Although Lockridge limited its discussion of this reasonableness standard to departures from the guidelines range, there was no qualifier to the Michigan's Supreme Court subsequent statement that resentencing will be required when a sentence is determined to be unreasonable. Id.

The Lockridge Court did not clarify a framework for considering the reasonableness of a departure. This Court subsequently adopted the principle of proportionality test that once applied to departures from the judicial sentencing guidelines. See Steanhouse supra 500 Mich at 336.

The Michigan Supreme Court should conclude as an initial matter that the first sentence of MCL 769.34(10) is no longer valid. That statutory subsection begins with: **If a minimum sentence is within the appropriate sentence guidelines range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in the scoring of the sentencing guidelines or inaccurate information relied upon in determining the sentence.** Because *Lockridge* declared the legislative sentencing guidelines to be advisory rather than mandatory, there can be no mandatory presumption of reasonableness, especially in light of a return to *Milbourn* and the Michigan Supreme Court's prior acknowledgment that some sentences within the guidelines may be unreasonable. See *Milbourn* supra 435 Mich at 661. There must be a mechanism for rebutting the presumption, similar to the one that existed in the *Milbourn* era, and to the one that continues to function in federal court. See *People v Sharp, 192 Mich App 501, 505-06 (1992)*; see also *Rita v United States 551 US 338, 347; 127 SC 2456 (2007).*

To cute the constitutional defect found in the mandatory sentencing guidelines, the *Lockridge* Court severed MCL 769.34(2) to the extent that it is mandatory and struck down the requirement of a 'substantial and compelling reason' to depart from the guidelines range in MCL 769.34(3). *Lockpidge* supra 498 Mich at 391. It further recognized that other portions of MCL 769.34 might need to be severed in the future: To the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary. Id at 364-365 and n-1. Indeed, the Court of Appeals already relied upon this holding to strike down that part of MCL 769.34(4) that made intermediate sanctions mandatory whenever the top end of the range equaled 18 months or less. See *Schrauben* supra 314 Mich App at 195.

Likewise, the Michigan Court of Appeals has not addressed whether MCL 769.34(10) contained mandatory language of the same type that was fatal to the subsection on intermediate sanctions. The court has assumed without analysis that sentences within the controlling guidelines range must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information. See *Schrauben* supra 314 Mich App at 196 citing MCL 769.34(10); and *Anderson* supra 322 Mich App at 636 n 34. Consequently, a mandatory, non-rebuttable presumption of proportionality, fashioned by the Legislature to fit a scheme in which adherence to the guidelines was mandatory, continues even though the state courts has held that the guidelines, to pass constitutional muster, must now be treated as advisory.

This is far different than the approach used in the federal sentencing scheme that inspired the *Lockridge* remedy. In *Rita*, supra, the United States Supreme Court examined the reasonableness of a federal sentence imposed after the federal guidelines were declared advisory in *United States v Booker 543 US 220, 261-263, 125 SC 738 (2005)*. The *Rita* Court held that nonbinding appellate presumption that a guidelines sentence is reasonable does not violate the Sixth Amendment principles underlying *Booker*. See Rita supra 551 US at 352-353 (emphasis added). After all, presumptively reasonable does not mean always reasonable, the presumption, of course, must be genuinely rebuttable. See *Rita* supra 551 US at 366 (Stevens, J. concurring) (emphasis in original).

A non-rebuttable presumption, on the other hand, raises Sixth Amendment problems. Even after *Lockridge*, sentencing courts must continue to score the guidelines using facts found by the judge by a preponderance of the evidence. See *Lockridge* supra 498 Mich at 365. By imposing a mandatory presumption, MCL 769.34(10), ensures that some sentences will be upheld as reasonable only because of the existence of judge found facts. See *Rita* supra 551

US at 373 (Scalia, J., concurring in part and concurring in the judgment). The State of Michigan Court has never determined whether MCL 769.34(10) is incompatible with Lockridge.

**B.** Mr. Ware's sentence is unreasonable under Steanhouse and Milbourn.

Under Milbourn, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. See *People v Steanhouse 313 Mich App 1 (2015)* (quoting Milbourn 435 Mich at 659-660).

Here, as noted by the Michigan Court of Appeals, the trial court denied resentencing because it was an outrageous case, there was a child present in the home who was likely frightened and because of Mr. Ware's criminal record. See *People v Ware 2018 Mich App Lexis 2721* at pp 2-3. However, Mr. Ware was assessed a total of 80 Offense Variable points, and 135 Prior Record Variable points, which adequately accounted for all of the trial court's concerns. The facts of the offense were adequately accounted for in the guidelines, most notably as it relates to the 20-points score under OV 1, the 15-points score under OV 2, the 10-points score under OV 4, the 10-point score under OV 9, and the 15-points score under OV 10. Similarly, Mr. Ware's prior record was adequately accounted for in the scoring of PRV 1, PRV 2, PRV 5, and PRV 7.

In addition, the trial court failed to consider several mitigating factors, including Mr. Ware's diagnoses of bipolar disorder and schizophrenia (controllable through medications), several serious physical health ailments, and his older age, all of which were noted in the presentence investigation report.

Based on the Steanhouse and Milboum factors, the sentences imposed against Mr. Ware were unreasonable.

C. Mr. Ware's minimum sentences are constitutionally disproportionate to his circumstances and to the circumstances of his crimes.

Both the federal and state constitutions forbid the imposition of a disproportionate sentence. US Const Am VIII; Mich Const of 1963, Art-1 §16; see also *People v Bullock 440 Mich 15, 37 (1992)*. Sentences must be proportional to the seriousness of the circumstances surrounding the offense and the offender. See *People v Babcock 469 Mich 247, 262 (2003)*; *Milbourn* supra 435 Mich at 636. In the instant petition, Mr. Ware's sentences are not proportionate.

As a general rule, a sentence that fell within the range recommended by the judicial guidelines was presumed to be neither excessive nor disparate. See Sham supra 192 Mich App at 505 citing *Milbourn* supra 435 Mich at 660-661. But *Milbourn* itself recognized that conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances. See *Milboum* supra 435 Mich at 661. As such, Defendants could therefore overcome the presumption of proportionality by presenting evidence of uncommon or fate circumstances. See *Sharp* supra 192 Mich App at 505 citing *Milbourn* 435 Mich at 661. Proportionality review also examines the severity of the offense and the seriousness of the offender's criminal record. See *Milbourn* supra 435 Mich at 636.

In the instant petition the trial court determined that Mr. Ware's sentencing guidelines range was 117 months to 320 months, based on a total of 135 PRV points and 80 OV points. A 312-month minimum sentence (26 years) is disproportionate to Mr. Ware, given the mitigating factors that were unaccounted for, which include his serious mental illness and physical ailments, as well as the fact that because Mr. Ware is older, it is likely he will die in prison as a result of the 26-year minimum sentences.

Lower minimum sentences would still ensure years of punishment, a strong deterrent for the community, and Mr. Ware, but a greater chance for access to services in the community to address his health issues. This Court should remand this matter back to the State Courts for a proportionality review or grant any other relief this Court determines is necessary under the circumstances presented in this petition.

**RELEF SOUGHT**

For the reasons stated herein, this court should grant this petition, or in the alternative, order an evidentiary hearing to preserve these question for appeal, or grant such other relief as the court deems just and fair under the circumstances of this case.

**DECLARATION OF SERVICE**

The petitioner certify under 28 USC 1746 that a copy of this document was served to all parties by U.S. Mail.

**SUBMITTED BY:**

Cornelius Ware

CORNELIUS WARE #196489

**DATED:** December 2, 2019

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CORNELIUS WARE**
Petitioner

U.S. DISTRICT #

vs

U.S.D.J.

**JOHN DAVIDS**, Warden
Respondent

U.S.M.J.

_______________________________/

**LIST OF APPENDIXES**

| | | |
|---|---|---|
| **A.** | People v Ware 2019 Mich Lexis 1567 | September 10, 2019 |
| **B.** | People v Ware 2018 Mich App Lexis 2721 | June 21, 2018 |
| **C.** | People v Ware 2016 Mich Lexis 1992 | September 27, 2016 |
| **D.** | People v Ware 2016 Mich App Lexis 609 | March 22, 2016 |
| **E.** | Affidavit of Jessica L. Zimbelman | June 22, 2015 |
| **F.** | Defendant's Witness List | August 01, 2014 |
| **G.** | Personal Protection Order | September 10, 2013 |

**DECLARATION OF SERVICE**

The petitioner certify under MCR 2.107(D) that a copy of this document was served to all parties by U.S. Mail.

**SUBMITTED BY:**
Cornelius Ware

CORNELIUS WARE #196489

**DATED:** December 2, 2019

**COVER PAGE**

**PEOPLE V WARE 2019 MICH LEXIS 1567 SEPTEMBER 10, 2019**

**A**

# People v. Ware, 2019 Mich. LEXIS 1567

Copy Citation

Supreme Court of Michigan

September 10, 2019, Decided

SC: 158257-8

**Reporter**
2019 Mich. LEXIS 1567 * | 932 N.W.2d 609 | 2019 WL 4302154

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v CORNELIUS WARE, Defendant-Appellant.

**Prior History:**
[*1] COA: 337903; 337904. Wayne CC: 14-000562-FH; 14-000563-FH.

People v. Ware, 2018 Mich. App. LEXIS 2721 (Mich. Ct. App., June 21, 2018)

**Judges:** Bridget M. McCormack, Chief Justice. David F. Viviano, Chief Justice Pro Tem. Stephen J. Markman, Brian K. Zahra, Richard H. Bernstein, Elizabeth T. Clement, Megan K. Cavanagh, Justices.

## Opinion

**Order**

On order of the Court, the application for leave to appeal the June 21, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

PEOPLE V WARE 2018 MICH APP LEXIS 2721 JUNE 21, 2018

B

# People v. Ware, 2018 Mich. App. LEXIS 2721

Copy Citation

Court of Appeals of Michigan

June 21, 2018, Decided

No. 337903, No. 337904

**Reporter**
**2018 Mich. App. LEXIS 2721 *** | 2018 WL 3074419

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v CORNELIUS WARE, Defendant-Appellant.

**Notice:**
THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**Subsequent History:** Leave to appeal denied by People v. Ware, 2019 Mich. LEXIS 1567 (Mich., Sept. 10, 2019)

**Prior History:**
[*1] Wayne Circuit Court. LC No. 14-000562-01-FH.

Wayne Circuit Court. LC No. 14-000563-01-FH.

People v. Ware, 2016 Mich. App. LEXIS 609 (Mich. Ct. App., Mar. 22, 2016)

## Core Terms

guidelines, sentence, trial court, resentencing, fact-finding, advisory, score

**Judges:** Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

## Opinion

PER CURIAM.

Defendant appeals as of right the trial court's order, entered after a *Crosby*1 remand hearing, denying his request for resentencing and thereby reaffirming defendant's original sentences of 26 to 50 years' imprisonment for each of his convictions of two counts of sending or delivering an explosive substance with the intent to injure a person or destroy property, MCL 750.204(2)(b), two counts of second-degree arson, MCL 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), aggravated stalking, MCL 750.411i(2)(a), and felon in possession of a firearm, MCL 750.224f.2 We affirm.

Defendant's convictions arise from two separate firebombing incidents at his ex-girlfriend's family's home in Highland Park in September 2013. The trial court scored the sentencing guidelines for defendant's conviction of sending or delivering an explosive substance with the intent to injure a person or destroy property, which is a class B offense. MCL 777.16k. The court's scoring decisions resulted in a guidelines range of 117 to 320 months for a fourth-offense habitual offender under **[*2]** the applicable sentencing grid. MCL 777.63; MCL 777.21(3)(c). In a prior appeal, this Court affirmed defendant's convictions, "but remand[ed] to the trial court to determine the need for resentencing as required by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)." *People v Ware*, 2016 Mich. App. LEXIS 609, unpublished per curiam opinion of the Court of Appeals, issued March 22, 2016 (Docket Nos. 323710; 323711).

On remand, defendant filed a motion for resentencing, and the trial court held a hearing. In addition to expressing their views about resentencing, the parties discussed the parameters of a *Crosby* remand, including that the sentencing guidelines were now only advisory. The trial court declined to resentence defendant, stating, in relevant part:

This was an outrageous case. It was a break-up of a relationship that might in and of itself be sad, but, however, it escalated to the notion of harassing and menacing phone calls that were made, threatening to blow up the house.

And on the date of this particular incident, one of the things that I remember in particular about this case is that there was a small child that was in the house, who certainly was fairly frightened by all of this, as any adult would be in this kind of circumstance.

And I'm also mindful of the fact that if I recall **[*3]** correctly, Mr. Ware had 12 prior convictions. Some point the community needs to be protected from those who over and over and over again commit crimes, particularly the kind of crime here, which as I said was an outrageous threat to not only those in the house, but also any time there is an intentional fire set, it can spread and cause danger to the firefighters who have to come and put out the fire.

There is untold safety concern for the community, not only the direct victims as those are nearby can potentially be put in harm's way.

If Mr. Ware was before me, given the rescoring of the guidelines, it would be exactly the same sentence.

So consistent with the Court of Appeals and the Supreme Court's directive, my ruling is that there is no necessity for resentencing because there would not be a change in my sentence.

We review a trial court's denial of a motion for resentencing for an abuse of discretion. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). Defendant argues on appeal that although his 26-year minimum sentence is within the guidelines range as scored by the trial court, the higher range was improperly based on judicial fact-finding, because the facts used to score OVs 4 and 14

were found by the court and not by a jury. **[*4]** We disagree. Defendant's premise that the trial court was prohibited from considering a guidelines range that was based on judge-found facts is flawed.

In Lockridge, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence," and are permitted to score the OVs using judicially found facts. *Id.* at 392 n 28. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016),

[t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself; it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by **[*5]** eliminating judicial fact-finding.

More recently, in *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017), our Supreme Court reaffirmed its holding in *Lockridge* that the sentencing guidelines are advisory only. The Court articulated that, "[w]hat made the guidelines unconstitutional, in other words, was the combination of the two mandates of judicial fact-finding and adherence to the guidelines." *Id.* at 467. This combination was no longer extant at defendant's *Crosby* remand hearing. Although defendant's guidelines range was still based in part on judicial fact-finding, the trial court recognized that, under *Lockridge*, the guidelines range was only advisory. Therefore, the trial court did not err when it evaluated defendant's sentence using a guidelines range that was based on judicially found facts, given that the court was aware that the guidelines were only advisory.

Affirmed.

/s/ David H. Sawyer

/s/ Mark J. Cavanagh

/s/ Karen M. Fort Hood

**Footnotes**

- 1

  *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

- 2

  We reject plaintiff's challenge to this Court's jurisdiction. MCR 7.203(A) provides that this Court has jurisdiction of an appeal as of right from a "final order" of the circuit court. MCR 7.202(6)(b)(*iv*) defines a "final order" as including, in a criminal case, "a sentence imposed, *or order entered*, by the trial court following a remand from an appellate court in a prior appeal as of right." (Emphasis added.) In defendant's prior appeal by right, this Court remanded the case to the trial court for further proceedings under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and the trial court resolved that remand order by entering

an order denying resentencing. Therefore, the trial court's order denying resentencing qualifies as a final order appealable as of right under MCR 7.202(6)(b)(*iv*). Although plaintiff argues that the issue raised by defendant is not reviewable because it is beyond the scope of the remand order, that question only implicates the scope of this Court's review, it does not affect this Court's jurisdiction over the order appealed.

**PEOPLE V WARE 2016 MICH LEXIS 1992 SEPTEMBER 27, 2016**

# People v. Ware, 2016 Mich. LEXIS 1992

Copy Citation

Supreme Court of Michigan

September 27, 2016, Decided

SC: 153735-6

**Reporter**
**2016 Mich. LEXIS 1992 *** | 500 Mich. 868 | 885 N.W.2d 269

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v CORNELIUS WARE, Defendant-Appellant.

**Prior History:**
**[*1]** COA: 323710; 323711. Wayne CC: 14-000562-FH; 14-000563-FH.

People v. Ware, 2016 Mich. App. LEXIS 609 (Mich. Ct. App., Mar. 22, 2016)

**Judges:** Robert P. Young, Jr., Chief Justice. Stephen J. Markman, Brian K. Zahra, Bridget M. McCormack, David F. Viviano, Richard H. Bernstein, Joan L. Larsen, Justices.

## Opinion

### Order

On order of the Court, the application for leave to appeal the March 22, 2016 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

**PEOPLE V WARE 2016 MICH APP LEXIS 609 MARCH 22, 2016**

People v. Ware, 2016 Mich. App. LEXIS 609

Copy Citation

Court of Appeals of Michigan

March 22, 2016, Decided

Nos. 323710; 323711

Reporter
2016 Mich. App. LEXIS 609 *

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v CORNELIUS WARE, Defendant-Appellant.

Notice:

THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

Subsequent History: Leave to appeal denied by People v. Ware, 500 Mich. 868, 885 N.W.2d 269, 2016 Mich. LEXIS 1992 (Sept. 27, 2016)
Decision reached on appeal by People v. Ware, 2018 Mich. App. LEXIS 2721 (Mich. Ct. App., June 21, 2018)

Prior History:

[*1] Wayne Circuit Court. LC Nos. 14-000562-FH; 14-000563-FH.

Core Terms

sentence, score, firebomb, stalking, trial court, felony, aggravated, harassed, van, trial counsel, convictions, witnesses, variable, imprisonment, street, impounded, offender, predatory conduct, inventory search, probable cause, circumstances, individual's, resentencing, ineffective, admissible, guidelines, vulnerable, credible, provides, invalid

Judges: Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

Opinion

Per Curiam.

A jury convicted defendant of sending or delivering an explosive substance with the intent to injure a person or destroy property, MCL 750.204(2)(b), second-degree arson, MCL 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), aggravated stalking, MCL 750.411i(2)(a), and felon in possession of a firearm, MCL 750.224f, for firebombing his ex-girlfriend's family's residence on two separate occasions in September 2013. The court sentenced defendant as a fourth habitual offender, MCL 769.12, to 26 to 50 years' imprisonment for each conviction. Defendant raises several challenges to trial counsel's performance and to his sentences. We affirm defendant's convictions, but remand to the trial court to determine the need for resentencing as required by People v Lockridge, 498 Mich 358; 870 NW2d 502 (2015).

I. BACKGROUND

After a lengthy relationship marred by domestic violence, Iris Johnson broke up with defendant in the summer of 2013. Displeased with this turn of events, defendant engaged in a harassing course of conduct, frequently telephoning Johnson and threatening to kill her family and blow up their residence. Johnson, who lived with her mother, siblings, and several [*2] nieces and nephews, feared for everyone's safety. In July 2013, someone fired shots at her home, and in August, someone unsuccessfully attempted to firebomb the house on more than one occasion. Johnson did not report these incidents to the police.

On September 7, 2013, however, Johnson caught defendant in the act. As she sat on a porch across the street, Johnson observed two men approach her house. One was dressed all in black and threw a firebomb at the home. The second man dropped his firebomb on the lawn. As the men ran away, Johnson recognized defendant as the man in black. Johnson summoned the fire department and her friend burned his leg trying to assist the family. Following this incident, Johnson secured a personal protection order (PPO) against defendant but was unable to serve him with it until after his September 27 arrest.

On September 27, 2013, Johnson, her sister, and several nephews were sleeping in an upstairs bedroom. Someone threw a brick through a second-floor window centered above the home's staircase to the main floor. A firebomb followed the brick and caught the curtains on fire. Someone threw a second firebomb at the home's back door. The women and children were [*3] forced to skirt fire and smoke to descend the stairwell, their only means of escape. Johnson did not observe defendant at the home that day, but based on the prior incident and his many threats, Johnson identified defendant as the likely perpetrator. She described defendant and his vehicle, a white van, to the responding officers. Johnson's sister did

observe defendant standing in the yard, however. The officers found two additional unused "Molotov cocktails" in the backyard.

Based on information provided by Johnson, Detroit police officers travelled to a home on Waverly Street in Detroit. Defendant was standing outside, talking on a cell phone. Upon seeing the police, defendant tried to go into the house, but the occupants denied him entry. Defendant told the officers that he had been at the Waverly Street address all day, leaving only briefly on foot to purchase gasoline. However, defendant could not produce the container that he had allegedly filled. And defendant smelled strongly of gas. The police impounded defendant's van, which was parked in the street outside the house. Inside, they found a shotgun and two shotgun shells.

II. ASSISTANCE OF COUNSEL

A

Defendant contends that his [*4] trial counsel should have investigated and presented witnesses to support his alibi defense. At trial, defendant claimed that he was with Eddie McCampbell at McCampbell's home on September 7 and with Jeffrey, Crystal and Sharon Hall, Crystal's mother, Marlon Carter and David Donnell Hughes at the Waverly Street address during the September 27 incident. He asserts that his trial counsel never spoke to these individuals.

Although defendant filed a motion to remand to the trial court for a hearing pursuant to People v Ginther, 390 Mich 436, 443; 212 NW2d 922 (1973), this Court denied that motion. People v Ware, unpublished order of the Court of Appeals, entered July 23, 2015 (Docket Nos. 323710, 323711). As such, our review is limited to mistakes apparent on the existing record. People v Payne, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"'[T]he right to counsel is the right to the effective assistance of counsel.'" United States v Cronic, 466 U.S. 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting McMann v Richardson, 397 U.S. 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v Washington, 466 U.S. 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing [*5] professional norms." People v Solmonson, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. 261 Mich App at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. Strickland, 466 U.S. at 689. [People v Galloway, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902; 870 NW2d 893 (2015).]

Defense counsel possesses "wide discretion in matters of trial strategy." People v Odom, 276 Mich App 407, 415; 740 NW2d 557 (2007). And decisions regarding what witnesses to present are generally considered strategic, supporting relief only when the defendant is denied a substantial defense based on a witness's absence. Payne, 285 Mich App at 190. A defense is substantial "if it might have made a difference in the outcome of the trial." People v Chapo, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to [*6] make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." [Wiggins v Smith, 539 U.S. 510, 521-522; 123 S Ct 2527; 156 L Ed 2d 471 (2003), quoting Strickland, 466 U.S. at 690-691.]

See also People v Trakhtenberg, 493 Mich 38, 52; 826 NW2d 136 (2012); People v Grant, 470 Mich 477, 485; 684 NW2d 686 (2004). The failure to conduct an adequate investigation comprises ineffective assistance if it undermines confidence in the outcome of the trial. People v Russell, 297 Mich App 707, 716; 825 NW2d 623 (2012).

The existing record does not support defendant's claim that defense counsel failed to conduct an adequate investigation. Defendant's August 1, 2014 witness list included "David Huges" as well as Jeffrey and Crystal Hall. Defendant's appellate attorney presented an affidavit to this Court, indicating that she spoke to David Donnell Hughes by telephone on June 10, 2015. Hughes corroborated that he was with defendant at the time of the September 27 firebombing and would have testified at defendant's trial, but that trial counsel never contacted him. Hughes promised to sign an affidavit prepared by appellate counsel, but thereafter failed to return counsel's calls and never signed an affidavit. Appellate counsel contacted trial counsel to discuss the matter and trial counsel indicated that she never spoke to Hughes because the number provided was "not in service." Interestingly, appellate counsel made no mention [*7] of trying to contact any of the other potential alibi witnesses identified by defendant.

It appears that trial counsel did attempt to investigate, just as appellate counsel tried to do, but was blocked by uncooperative witnesses. Unable to speak to the potential alibi witnesses, trial counsel likely chose not to file a notice of alibi defense as required by MCL 768.20(1).1 Given the circumstances, we cannot find trial counsel ineffective in this regard. In the end, defendant was able to present his claim of alibi to the jury through his own testimony. And in light of the eyewitness testimony placing defendant at the scene of the firebombings, defendant's odor when interviewed by police on September 27, and his inability to substantiate that he had filled a benign container with gasoline, we cannot conclude that defendant likely sustained prejudice as a result of the absence of his proposed alibi witnesses.

B

Defendant contends that counsel should have sought to suppress the evidence discovered in his van at the time of his arrest. The van was legally parked, defendant insists, and the police had no valid reason to seize and search it, rendering the gun discovered during the search inadmissible.

US Const, Am IV and Const 1963, art 1, § 11 guarantee the right of persons to be secure against unreasonable searches and seizures. As a general rule, officers must obtain a warrant based on probable cause to seize and search property. People v Davis, 442 Mich 1, 10; 497 NW2d 910 (1993). If a search conducted in violation of this rule uncovers evidence, that evidence usually must be suppressed. In re Forfeiture of $176,598, 443 Mich 261, 265; 505 NW2d 201 (1993). There are exceptions to the warrant requirement, however, [*9] and evidence collected during a permitted warrantless search is admissible. Davis, 442 Mich at 10.

One exception to the warrant requirement is for an "inventory search." In South Dakota v Opperman, 428 U.S. 364, 370-371; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the United States Supreme Court held that law enforcement officers do not violate the Fourth Amendment when they follow standard procedures to inventory the contents of a lawfully impounded automobile, as long as the impoundment and inventory search were not a pretext and as long as the scope of the search was reasonable. The goal is to preclude inventory searches that are "a ruse for general rummaging in order to discover incriminating evidence," not to impede the legitimate conduct of inventory searches. People v Poole, 199 Mich App 261, 266; 501 NW2d 265 (1993).

Highland Park Police Officer Michael Ochs testified that Johnson told him that defendant lived on Waverly but she did not know the house number. She described defendant's vehicle to assist in locating him. Ochs and his partner travelled to Waverly and discovered the white van parked in the street in front of a house. When defendant was placed under arrest, he "couldn't . . . give the [the officers] an answer on where he was staying so [they] decided to tow [the] van for safekeeping for [defendant]." Ochs clarified that the officers did not want [*10] to leave the van in the street and defendant offered no family member who could take custody of the vehicle so the officers had the van towed to the impound lot "so nothing [would] happen to it." Ochs testified that it was department policy to conduct an inventory of all towed vehicles to protect the vehicle owners' property rights and to protect the police from false claims of theft or property damage.

Here, as in Opperman, 428 U.S. at 375, defendant could make no "other arrangements for the safekeeping of his belongings" while he was in police custody. There is no record indication that the vehicle was parked illegally, but it is possible that the officers were concerned the vehicle might be stolen or vandalized, or that the vehicle would have to be moved on an upcoming garbage day. However, regardless of whether the officers could validly conduct an inventory search, they also had probable cause to conduct a search without a warrant. It is well established that if police officers have probable cause, they are permitted to conduct a warrantless search of a vehicle, "even after it has been impounded and [taken] in police custody." See Michigan v Thomas, 458 U.S. 259, 260-261; 102 S Ct 3079; 73 L Ed 2d 750 (1982); People v Romano, 181 Mich App 204, 217; 448 NW2d 795 (1989).

The officers in this case had probable cause to search defendant's van [*11] for evidence of the firebombings. "Probable cause exists when the facts and circumstances warrant a person of reasonable prudence to believe that the evidence of a crime or contraband sought is in a stated place." People v Harmelin, 176 Mich App 524, 534; 440 NW2d 75 (1989), aff'd sub nom Harmelin v Michigan, 501 U.S. 957; 111 S Ct 2680; 115 L Ed 2d 836 (1991). The question is "whether the facts and circumstances known to the officers would warrant a person of reasonable prudence to believe that evidence of a crime or contraband sought is in a stated place." People v Carter, 194 Mich App 58, 61; 486 NW2d 93 (1992). "A search of an automobile when probable cause exists 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'" People v Levine, 461 Mich 172, 179; 600 NW2d 622 (1999), quoting United States v Ross, 456 U.S. 798, 809; 102 S Ct 2157; 72 L Ed 2d 572 (1982). Eyewitnesses placed defendant at the scene of the firebombings. It was reasonable for the officers to believe that defendant drove to the scene of the crime in his vehicle. Accordingly, the officers were justified in searching defendant's vehicle for evidence of his involvement in these crimes, either at the scene of his arrest or following the vehicle's impoundment. Any motion to suppress the evidence would have been futile and counsel cannot be deemed ineffective for failing to raise it. People v Mack, 265 Mich App 122, 130; 695 NW2d 342 (2005).


C

Defendant also challenges counsel's failure to object to the [*12] admission of the PPO secured by Johnson against defendant. He claims that this evidence was improperly used to bolster Johnson's credibility. This evidence was admissible, however, to establish the elements of the aggravated stalking charge.

"Stalking" is defined by statute as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). The making of a "credible threat" enhances a charge to aggravated stalking and is defined as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." MCL 750.411i(1)(b).

The fact that Johnson secured a PPO was evidence that defendant's threats against Johnson were "credible" and caused Johnson to fear for the safety of her and her family. The PPO itself proved that Johnson actually secured [*13] the legal document. The evidence was therefore relevant and admissible. See MRE 401 (defining "relevant evidence" as "evidence having any tendency to make the existence" of a material fact "more probable or less probable than it would be without the evidence"); MRE 402 ("All relevant evidence is [generally] admissible."). Defendant does not contend that the PPO was rendered inadmissible under any exception to the evidentiary rule in MRE 403. Admission of the PPO was also consistent with MCL 600.2106, which states:

A copy of any order, judgment or decree, of any court of record in this state, duly authenticated by the certificate of the judge, clerk or register of such court, under the seal thereof, shall be admissible in evidence in any court in this state, and shall be prima facie evidence . . . of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree.

Because the PPO was properly admitted into evidence, counsel had no ground to object and defendant cannot support his ineffective assistance claim. Mack, 265 Mich App at 130.

III. JUDICIAL FACT FINDING

Defendant contends that the trial court improperly based his sentences on facts found by the judge rather than [*14] the jury in violation of Alleyne v United States, 570 U.S. ; 133 S Ct 2151; 186 L Ed 2d 314 (2013). He specifically challenges the circuit court's scoring of Offense Variables (OVs) 4, 10, and 14. Defendant failed to preserve his challenge by objecting on this ground in the trial court. Accordingly our review is limited to plain error. See People v Lockridge, 498 Mich 358, 392-393; 870 NW2d 502 (2015).

Recently, our Supreme Court relied on Alleyne in holding that Michigan's sentencing scheme, which permits judicial fact-finding in scoring the offense and prior record variables, violates the Sixth Amendment. Lockridge, 498 Mich at 388-389. The Michigan Supreme Court remedied that defect by rendering Michigan's sentencing guidelines advisory, just as the United States Supreme Court had done with regard to the federal sentencing guidelines in United States v Booker, 543 U.S. 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005). Lockridge, 498 Mich at 365.

Although Michigan's sentencing guidelines are "constitutionally deficient," our Supreme Court decreed in Lockridge that trial courts must still score the offense and prior record variables and assess the "highest number of points possible" for each one. Lockridge, 498 Mich at 392 n 28. A sentencing court is obligated to "consult the applicable guidelines range and take it into account when imposing a sentence." 498 Mich at 392. [People v Masroor, 313 Mich. App. 358, 371; 880 N.W.2d 812 (2015),]

In People v Stokes, 312 Mich. App. 181, 197, 877 N.W.2d 752 (2015), this Court distilled the procedure set [*15] forth in Lockridge for trial courts to reconsider sentences when faced with an unpreserved challenge:

Noting that "virtually all" of these cases involve unpreserved challenges, our Supreme Court described a procedure, the goal of which is to determine whether a Lockridge error resulted in prejudice to any given defendant. Such an inquiry is necessary because unpreserved constitutional errors are subject to plain-error review, which requires a defendant to demonstrate not only that an error occurred, but that "the error affected the outcome of the lower court proceedings." Our Supreme Court held that if a defendant is able to "establish a threshold showing of the potential for plain error," the case must "be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is

yes, the court shall order resentencing." The precise procedure to be followed, modeled on that adopted in United States v Crosby, [397 F3d 103 (CA 2, 2005),] is as follows:

[O]n a Crosby remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification [*16] is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by [MCR 6.425], if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [Citations omitted.]

In calculating defendant's total OV score of 80, the court relied on factors that were not elements of the charged offenses and were therefore not decided by the jury.

In relation to OV 4, psychological injury to the victim, a 10-point score is appropriate if the victim suffers "[s]erious psychological injury requiring professional treatment," regardless of whether such treatment is sought. MCL 777.34(1)(a), (2). The Department of Corrections recommended no points be scored for this variable. The prosecution, however, requested a 10-point score because Johnson's four-year-old nephew, who was asleep in the home during [*17] the September 27 firebombing, had been fearful at bedtime since the incident. The child's grandmother testified regarding his emotional condition at defendant's sentencing hearing. The court properly assessed points for OV 4 based on this evidence. See People v Williams, 298 Mich App 121, 124; 825 NW2d 671 (2012); People v Davenport (After Remand), 286 Mich App 191, 200; 779 NW2d 257 (2009). However, this was a judge-found fact.

The DOC also recommended no score for OV 10, but the trial court assigned 15 points on the prosecution's request. OV 10, "exploitation of a vulnerable victim," should be scored 15 points when the defendant engaged in "predatory conduct." MCL 777.40(1)(a). "'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "To victimize is to make a victim of someone, and a victim is a person who suffers from a destructive or injurious action." People v Ackah-Essien, 311 Mich App 13, 37; 874 NW2d 172 (2015) (2015). "[P]redatory conduct" therefore references "behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." People v Cannon, 481 Mich 152, 161; 749 NW2d 257 (2008). The primary concern in assessing points under this variable is "the exploitation of vulnerable victims." 481 Mich at 157. Therefore, "points should be assessed . . . when it is readily apparent that a victim was 'vulnerable,' i.e., was [*18] susceptible to injury, physical restraint, persuasion, or temptation," and that the vulnerable victim was exploited. 481 Mich at 158-159.

In arguing in favor of this score, the prosecution stated, "This case is one of domestic violence that initially started over a relationship, and the testimony is or was that there was behavior on behalf of the defendant attempting to control her and that in terms of her leaving him, and this is what accelerated or initiated all of this." Indeed, defendant's harassing phone calls and threats primed the pump, making

Johnson fearful. On September 27, defendant waited until the family was asleep, throwing a firebomb into the home in a location that would impede the escape of Johnson, her sister, and several young children. See Ackah-Essien, 311 Mich App at 37 ("The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct.") Accordingly, we discern no error in the scoring of this variable.

It is a closer question whether OV 10 was actually scored on judge-found facts. In considering this issue, "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of [*19] the charged offense." Alleyne, 133 S Ct at 2158.

[T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. [133 S Ct at 2162.]

Here, the offense of aggravated stalking is equivalent to "predatory conduct" and "victimization." MCL 750.411i provides, in relevant part:

(1) As used in this section:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

(b) "Credible threat" means a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual.

(c) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(d) "Harassment" means conduct directed [*20] toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(e) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(f) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

* * *

(iii) Appearing at that individual's workplace or residence.

(iv) Entering onto or remaining on property owned, leased, or occupied by that individual.

(v) Contacting that individual by telephone.

(vi) Sending [*21] mail or electronic communications to that individual.

(vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

(g) "Victim" means an individual who is the target of a willful course of conduct involving repeated or continuing harassment.

(2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

(a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.

* * *

(c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim. . . .

The act of aggravated stalking amounted to predatory conduct directed at a victim for the primary purpose of victimization, preceded the firebombing of the victim's residence, and was used to make Johnson vulnerable for the attacks. Accordingly, the trial court did not score this factor based on judge-found facts [*22] and no Sixth Amendment violation occurred.

Finally, although the circuit court correctly scored OV 14, that score was based on judicially determined facts. MCL 777.44 provides for a 10-point score for this variable when the defendant was the leader in a multiple offender situation. Johnson observed defendant with a second individual during the September 7 incident and the court found that multiple individuals were involved in the September 27 incident as firebombs were thrown in quick succession at both the front and back of the house. The evidence supported that defendant was the leader in both incidents as he was Johnson's ex-boyfriend and had made threats to blow up the house before the crimes. However, that multiple offenders were involved was not an element of any of the charged offenses.

Less 20 points for those variables based on judicially-found facts, defendant's total OV score is reduced to 60 and his OV Level reduced from VI to V. The reliance on judge-found facts therefore increased defendant's minimum sentencing guidelines range. This is the very type of case governed by Lockridge and remand for consideration of the necessity of resentencing consistent with Crosby is required.

IV. SENTENCES ABOVE [*23] STATUTORY MAXIMUMS

Finally, defendant asserts that his sentences for aggravated stalking and felon in possession of a firearm are invalid because, even with consideration of his status as a habitual fourth offender, they exceed the statutory maximums. Defendant failed to preserve this challenge by raising a timely objection below or filing a motion to correct an invalid sentence under MCR 6.429(B). People v McGuffey, 251 Mich App 155, 165-166; 649 NW2d 801 (2002). Our review is therefore limited to plain error affecting defendant's substantial rights. Carines, 460 Mich at 763-764.

"A sentence is invalid when it is beyond statutory limits. . . ." People v Miles, 454 Mich 90, 96; 559 NW2d 299 (1997). "Although the authority of the court over a defendant typically ends when a valid sentence is pronounced, the court may correct an invalid sentence after sentencing." Id. In accordance with MCR 6.429(A), "The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law."

Aggravated stalking is governed by MCL 750.411i. Subsection (3)(a) of the statute provides for a maximum sentence of "imprisonment for not more than 5 years or a fine of not more than $10,000.00, or both." The statutory maximum sentence for felon in possession of a firearm is set by MCL 750.224f(5) at "imprisonment for not more than 5 years [*24] or a fine of not more than $5,000.00, or both." Defendant was, however, sentenced as a fourth habitual offender. MCL 769.12 provides for sentencing enhancement for such offenders:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

(b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

The trial court sentenced defendant to 26 to [*25] 50 years' imprisonment for his aggravated stalking and felon-in-possession convictions. Defendant had four additional felony convictions connected with the underlying offenses. In addition, defendant's presentence investigation report listed 12 prior felony and four misdemeanor convictions. As such, defendant's sentences for aggravated stalking and felon in possession comported with the governing statutes.

We affirm defendant's convictions, but remand this matter to the trial court to determine the necessity for resentencing in accordance with Lockridge. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher

/s/ Kathleen Jansen

/s/ Douglas B. Shapiro

Footnotes

1

The statute provides:

If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the [*8] trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

**AFFIDAVIT OF JESSICA L. ZIMBELMAN JUNE 22, 2015**

E

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT

PEOPLE OF THE STATE OF MICHIGAN
Plaintiff-Appellee

COA Nos. 323710, 323711
Circuit Court Nos. 14-0562-01, 14-0563-01

-vs-

CORNELIUS WARE
Defendant-Appellant.
_______________________________/

AFFIDAVIT OF JESSICA L. ZIMBELMAN

STATE OF MICHIGAN )
) ss.
COUNTY OF INGHAM )

Jessica L. Zimbelman, being first duly sworn, deposes and says:

1. On June 10, 2015, I spoke with David Donnell Hughes on the telephone. We talked in detail about his knowledge of the events of September 27, 2013 and he reported the following information to me:
   a. On September 27, 2013, Mr. Hughes, a friend of Mr. Ware's, was with Mr. Ware at the home of Jeff Hall at 50 Waverly Road, Highland Park, Michigan. Mr. Hughes lived across Waverly Road from the Halls.
   b. Mr. Hughes was with Mr. Ware all day and evening, except for some amount of time between the hours of 3:00 p.m. and 5:00 p.m., when Mr. Hughes left to go to the store to buy cigarettes.
   c. Mr. Hughes remembers September 27, 2013 specifically because he was at the same house, with Mr. Ware, when the police arrived and arrested Mr. Ware.
   d. Prior to trial, Mr. Hughes never spoke with Mr. Ware's trial counsel.
   e. Mr. Hughes was never called to testify at Mr. Ware's trial, but he would have testified regarding the events of September 27, 2013 if he had been called to testify.

2. Mr. Hughes indicated to me that he was willing to sign an affidavit consistent with the above information. However, subsequent calls to Mr. Hughes to arrange a time to sign the affidavit have not been returned.

3. If this Court remands for a *Ginther* hearing, we can subpoena him to testify.

4. Appellate counsel engaged in a series of emails with trial counsel, and trial counsel responded regarding her decision not to call Mr. Hughes to testify with the following: "I have reviewed my notes and I do not believe that I ever spoke with Mr. Hughes. My note specifically states "# not in service.""

5. Appellate counsel had no difficulties obtaining a working telephone number for Mr. Hughes.

Jessica L. Zimbelman

Subscribed and sworn to before me
On June 22, 2015.
Joan M. Downey
Notary Public, Ingham County, Michigan
My commission expires: 11/1/2020

**DEFENDANT'S WITNESS LIST AUGUST 01, 2014**

F

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE
CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff,

Case No: 14-000563-01
Hon. Timothy Kenny

v

CORNELIUS WARE,
Defendant.
_____________________________________/

BRANDI N. TAYLOR (P65040)
Attorney for Defendant
28475 Greenfield Rd., Ste. 102
Southfield, MI 48076
(248) 238-8361
_____________________________________/

**DEFENDANT'S WITNESS LIST**

NOW COMES Defendant, Cornelius Ware, by and through his attorney, BRANDI N. TAYLOR, and submits the following list of witnesses, who may or may not be called at the time of trial:

1. Krista Ware.
2. David Huges.
3. Jeffery Hall.
4. Crystal Hall.
5. Reggie Blockett.
6. Any and all witnesses listed by the people, whether called or not.
7. Any and all witnesses identified in the discovery of this action, including but not limited to all those mentioned in answers to motions and other court records.
8. Defendant hereby reserves the right to add to and/or delete any witnesses from this witness list, depending on the course of discovery.
9. Any rebuttal witnesses, experts, records or documents.

Respectfully Submitted,

Date: August 1, 2014

Brandi N. Taylor, Attorney for Defendant

PERSONAL PROTECTION ORDER SEPTEMBER 10, 2013

G

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | (A) | PERSONAL PROTECTION ORDE[R] [X] EX PARTE (DOMESTIC RELATIONSHIP) | Ware, Cornelius Hon. Docket Judge PPO | 13-110851-PP 09/10/2013 |
|---|---|---|---|---|

Court address: 2 WOODWARD AVE, CAYMC BLDG., COURT ROOM 1801, Detroit MI 48226 (313) 224-0120

ORI MI- 820025J

(C) Petitioner's name: Iris Johnson

Address and telephone no. where court can reach petitioner: [redacted]

v

Respondent's name, address, telephone no., and DLN: Cornelius Ware, 18611 S. Aubin, Det, MI 48234, (313) 627-6461, (313) 695-3444

(D)

| Height | Weight | Race* | Sex* | Date of birth or age* | Hair color | Eye color | Other identifying information |
|---|---|---|---|---|---|---|---|
| 5'7 | 175 | Black | M | 46 | Gray | Brown | Tattoos on both arms |

*These items must be filled in for the police/sheriff to enter on LEIN; the other items are not required but are helpful. **Needed for NCIC entry.

Date: 9/10/13 Judge: Lynne A. Pierce [X] no hearing. [ ] **after hearing.

[X] 1. A petition requested respondent be prohibited from entry onto the premises, and either the parties are married, petitioner has property interest in the premises, or respondent does not have a property interest in the premises.

[X] 2. Petitioner requested an ex parte order, which should be entered without notice because irreparable injury, loss, or damage will result from the delay required to give notice or notice itself will precipitate adverse action before the order can be issued.

**[X] 3. Respondent poses a credible threat to the physical safety of the petitioner and/or a child of the petitioner.

[X] 4. Respondent [ ] **is the spouse or former spouse of the petitioner, had a child in common with the petitioner, or is residing or had resided in the same household as the petitioner. [X] has or had a dating relationship with the petitioner.

IT IS ORDERED:

5. Cornelius Ware is prohibited from:

[X] a. entering onto property where petitioner lives.
[ ] b. entering onto property at
[X] c. assaulting, attacking, beating, molesting, or wounding Iris Johnson
[ ] d. removing minor children from petitioner who has legal custody, except as allowed by custody or parenting-time order provided removal of the children does not violate other conditions of this order. An existing custody order is dated ____. An existing parenting-time order is dated ____.
[X] e. stalking as defined under MCL 750.411h and MCL 750.411i that includes but is not limited to:
  [X] following petitioner ~~or appearing within his/her sight.~~
  [X] appearing at petitioner's workplace or residence.
  [X] sending mail or other communications to petitioner.
  [X] contacting petitioner by telephone.
  [X] approaching or confronting petitioner in a public place or on private property.
  [X] entering onto or remaining on property owned, leased, or occupied by petitioner.
  [X] placing an object on or delivering an object to property owned, leased, or occupied by petitioner.
[ ] f. interfering with petitioner's efforts to remove his/her children/personal property from premises solely owned/leased by respondent.
[X] g. threatening to kill or physically injure Iris Johnson
[X] h. interfering with petitioner at his/her place of employment or education or engaging in conduct that impairs his/her employment or educational relationship or environment.
[ ] i. having access to information in records concerning a minor child of petitioner and respondent that will reveal petitioner's address, telephone number, or employment address or that will reveal the child's address or telephone number.
[X] j. purchasing or possessing a firearm.
[ ] k. other:

6. As a result of this order, federal and/or state law may prohibit you from possessing or purchasing ammunition or a firearm.

7. Violation of this order subjects respondent to immediate arrest and to the civil and criminal contempt powers of the court. If found guilty, respondent shall be imprisoned for not more than 93 days and may be fined not more than $500.00.

8. **This order is effective when signed, enforceable immediately, and remains in effect until** 9/10/14. This order is enforceable anywhere in this state by any law enforcement agency when signed by a judge, and upon service, may also be enforced by another state, an Indian tribe, or a territory of the United States. If respondent violates this order in a jurisdiction other than this state, respondent is subject to enforcement and penalties of the state, Indian tribe, or United States territory under whose jurisdiction the violation occurred.

9. The court clerk shall file this order with MICHIGAN STATE POLICE /DPD who will enter it into the LEIN.

10. Respondent may file a motion to modify or terminate this order. For ex parte orders, the motion must be filed within 14 days after being served with or receiving actual notice of the order. Forms and instructions are available from the clerk of court.

11. A motion to extend the order must be filed 3 days before the expiration date in item 8 or a new petition must be filed.

9-10-13 @ 3:45pm — Date and time issued

Lynne A. Pierce — Judge

P30544 — Bar no.

A TRUE COPY CATHY M. GARRETT WAYNE COUNTY CLERK By [signature] DEPUTY CLERK

Sep. 30. 2013 9:14AM MSP Detroit Reg Comm Center No. 0212 P. 2

Approved, SCAO

Original - Court file
Copies as needed

| STATE OF MICHIGAN JUDICIAL CIRCUIT COUNTY | PROOF OF SERVICE/ORAL NOTICE REGARDING PERSONAL PROTECTION ORDER | CASE NO. 13-110857-PP |
|---|---|---|

Court address

Court telephone no.

Petitioner's name Iris Johnson

Address and telephone no. where court can reach petitioner [redacted]

v

Respondent's name, address, and telephone no.
~~Cornelius Ware~~ ( ) No Phone
11651 Rosemont Ave (313) 695-3444
Detroit 48228 (313) 627-6601

**PROOF OF SERVICE**

I certify that on this date I personally served Sgt. Veronica Couch
Respondent name
at 14112 Woodward Highland Park, MI
Address or location of service
with a copy of the personal protection order issued on 09/10/13 by the Third
Date
Circuit Court.

9/28/13
Date

Sgt. Veronica Couch
Officer signature
Sgt. Veronica Couch
Name (type or print) ID no.
Highland Park Police Dept
Law enforcement agency
12050 Woodward
Address
Highland Park, MI 48203
City, state, zip
(313) 852-7338
Telephone no.

**PROOF OF ORAL NOTICE**

I certify that on this date I orally notified Cornelius Ware of
Respondent name
the existence of a personal protection order issued on 09/10/2013 by the 3rd
Date
Circuit Court. I also advised the respondent of the following:

- the specific conduct enjoined.
- the penalties for violating the order.
- where the respondent could obtain a copy of the personal protection order.

9-28-13
Date

[signature]
Officer signature
Michael Ochs 30
Name (type or print) ID no.
Highland Park Police Department
Law enforcement agency
14112 Woodward Ave
Address
Highland Park MI 48203 (313) 852-7338
City, state, zip Telephone no.

MCL 600.2950(22); MSA 27A.2950(22),
MCL 600.2950a(19); MSA 27A.2950a(19)

CC 366 (6/00) PROOF OF SERVICE/ORAL NOTICE RE

Sep. 30. 2013 9:14AM No. 0217 P. 3

classifications is necessary to guard against invidious discrimination," it said. "Indeed," the court warned,

> by insisting that inmates be housed only with other inmates of the same race, it is possible that prison officials will breed further hostility among prisoners and reinforce racial and ethnic divisions. By perpetuating the notion that race matters most, racial segregation of inmates "may exacerbate the very patterns of [violence that it is] said to counteract."

Although the court did not reach the merits of the prisoner's claim, it pointed out that virtually all other states and the federal government are able to manage their prison systems without reliance on racial segregation.

**Logic of *Turner*.** The *Turner* test exists because certain privileges and rights must necessarily be limited in the prison context, the court observed. However, it continued, the right to be free of racial discrimination is not one of those rights. On the contrary, the court said, compliance with the Fourteenth Amendment's prohibition of racial discrimination helps to maintain and enhance the legitimacy of the entire criminal justice system. "When government officials are permitted to use race as a proxy for gang membership and violence without demonstrating a compelling government interest and proving that their means are narrowly tailored, society as a whole suffers," it said.

**"When government officials are permitted to use race as a proxy for gang membership and violence without demonstrating a compelling government interest and proving that their means are narrowly tailored, society as a whole suffers."**

JUSTICE SANDRA DAY O'CONNOR

Justice Ruth Bader Ginsburg, concurring and joined by Justices David H. Souter and Stephen G. Breyer, wrote separately to assert that strict scrutiny does not necessarily apply to any and all racial classifications, such as those aimed at eradicating entrenched discrimination.

Justice John Paul Stevens, dissenting, said the court should have gone ahead and declared that the California policy violates prisoners' right to equal protection.

Justice Clarence Thomas, dissenting and joined by Justice Antonin Scalia, accused the majority of eviscerating *Turner* and ignoring the court's statement in a prior case that the *Turner* standard applies to all circumstances in which the needs of prison administration implicate constitutional rights. He further asserted that California's policy could pass muster under the standard set forth in *Lee*.

Bert H. Deixler, Los Angeles, argued the case for the prisoner. Frances T. Grunder, of the Office of the California Attorney General, argued the case for the state. Paul D. Clement, acting solicitor general, argued the case for the United States as amicus curiae.

*Full text at http://pub.bna.com/lw/03636.pdf and 76 CrL 448.*

## *Habeas Corpus*

## ***Crawford* Rule for Admission of Hearsay Is Applicable Retroactively on Habeas Review**

*U.S. Supreme Court's landmark ruling on requirements of Confrontation Clause undermines state convictions that were final when decision was handed down.*

The Confrontation Clause rule established in *Crawford v. Washington*, 541 U.S. 36, 74 CrL 401 (2004), which makes it easier for defendants keep their juries from hearing certain hearsay statements, is to be applied on federal habeas corpus review of state court convictions that were final when the Supreme Court announced its decision, a divided majority of the U.S. Court of Appeals for the Ninth Circuit held Feb 22. The Ninth Circuit's ruling conflicts with decisions from other circuits and has particular importance with respect to the validity of state convictions of child sex abuse obtained after trials at which the complainants were excused from testifying. (*Bockting v. Bayer*, 9th Cir., No. 02-15866, 2/22/05)

Under *Teague v. Lane*, 489 U.S. 288 (1989), new rules of criminal procedure generally are not applicable on federal habeas corpus review of a state court conviction that has been affirmed on direct appeal, unless the rule qualifies as a "watershed" rule that alters the understanding of the "bedrock" procedural elements essential to the fairness and accuracy of the criminal proceeding. Shifting majorities of the Ninth Circuit decided that *Crawford* did announce a "new" rule but that the rule falls within the *Teague* exception for watershed rules.

**The *Crawford* Rule.** In *Crawford*, the Supreme Court overturned two decades of precedent to hold that the Sixth Amendment's Confrontation Clause does not allow the admission at trial of a "testimonial" statement made by a witness who does not appear at trial unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The *Crawford* court said it made a mistake in *Ohio v. Roberts*, 448 U.S. 56 (1980), and its progeny by holding that an out-of-court statement exhibits the indicia of reliability demanded by the Confrontation Clause—even in the absence of an opportunity for cross-examination—if the statement either falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness.

The habeas petitioner before the Ninth Circuit was sentenced to life imprisonment for sexually abusing his six-year-old daughter. The Nevada Supreme Court relied on the *Roberts* line of cases to uphold the prosecutor's presentation at the defendant's trial of evidence of the daughter's out-of-court statements to a police detective. At the petitioner's preliminary hearing, the daughter had testified that she could not remember the incident, and she was not called as a witness at the petitioner's trial.

Cornelius Ware
Ionia Correctional Facility
1576 W. Bluewater Hwy.
Ionia, Michigan 48846




12-3-19

TO: The Clerk of the courts
Eastern District of Michigan
Theodore Levin United States Courthouse
231 W. Lafayette Boulevard, Fifth Floor
Detroit, Michigan 48226



# CIVIL COVER SHEET FOR PRISONER CASES

**Case No.** 19-13602 **Judge:** George Caram Steeh **Magistrate Judge:** Anthony P. Patti

| **Name of 1st Listed Plaintiff/Petitioner:** Cornelius Ware | **Name of 1st Listed Defendant/Respondent:** John Davids |
|---|---|
| **Inmate Number:** 196489 | **Additional Information:** |
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:** Ionia Maximum Correctional Facility 1576 W. Bluewater Highway Ionia, MI 48846 IONIA COUNTY | |

**BASIS OF JURISDICTION**

- ☐ **2 U.S. Government Defendant**
- ☒ **3 Federal Question**

**NATURE OF SUIT**

- ☒ **530 Habeas Corpus**
- ☐ **540 Mandamus**
- ☐ **550 Civil Rights**
- ☐ **555 Prison Conditions**

**ORIGIN**

- ☒ **1 Original Proceeding**
- ☐ **5 Transferred from Another District Court**
- ☐ **Other:**

**FEE STATUS**

- ☐ **IFP *In Forma Pauperis***
- ☒ **PD Paid**

---

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ **Yes** ☒ **No**
   ➢ **If yes, give the following information:**
   **Court:** __________
   **Case No:** __________
   **Judge:** __________

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ **Yes** ☒ **No**
   ➢ **If yes, give the following information:**
   **Court:** __________
   **Case No:** __________
   **Judge:** __________