UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELIUS WARE,

                Petitioner,                Case No. 4:19-cv-13602
                                                          Hon. Sean F. Cox

v.

JOHN DAVIS,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Cornelius Ware ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne County Circuit Court of delivering an explosive substance with the intent to injure a person or destroy property, MICH. COMP. LAWS § 750.204(2)(b), second-degree arson, MICH. COMP. LAWS § 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84(1)(a), aggravated stalking, MICH. COMP. LAWS § 750.411i(2)(a), and felon in possession of a firearm, MICH. COMP. LAWS § 750.224f. He was sentenced as a fourth-time habitual felony offender to concurrent terms of 26-to-50 years for each of his convictions.

The habeas petition raises four claims: (1) Petitioner was denied the effective assistance of counsel when his trial attorney failed to investigate and call alibi witnesses at trial, (2) Petitioner's Fourth Amendment rights were violated by the illegal search of his vehicle, (3) Petitioner was denied the effective assistance of counsel when his trial attorney failed to object to the admission

1

of the personal protection order issued against him with respect to the complainant, and (4) Petitioner's sentence is disproportionate and unreasonable.

The Court will deny the petition because the claims are without merit. The Court will also deny a certificate of appealability and deny leave to appeal in forma pauperis.

## I. Background

The Michigan Court of Appeals summarized the facts of the case:

> After a lengthy relationship marred by domestic violence, Iris Johnson broke up with defendant in the summer of 2013. Displeased with this turn of events, defendant engaged in a harassing course of conduct, frequently telephoning Johnson and threatening to kill her family and blow up their residence. Johnson, who lived with her mother, siblings, and several nieces and nephews, feared for everyone's safety. In July 2013, someone fired shots at her home, and in August, someone unsuccessfully attempted to firebomb the house on more than one occasion. Johnson did not report these incidents to the police.
>
> On September 7, 2013, however, Johnson caught defendant in the act. As she sat on a porch across the street, Johnson observed two men approach her house. One was dressed all in black and threw a firebomb at the home. The second man dropped his firebomb on the lawn. As the men ran away, Johnson recognized defendant as the man in black. Johnson summoned the fire department and her friend burned his leg trying to assist the family. Following this incident, Johnson secured a personal protection order (PPO) against defendant but was unable to serve him with it until after his September 27 arrest.
>
> On September 27, 2013, Johnson, her sister, and several nephews were sleeping in an upstairs bedroom. Someone threw a brick through a second-floor window centered above the home's staircase to the main floor. A firebomb followed the brick and caught the curtains on fire. Someone threw a second firebomb at the home's back door. The women and children were forced to skirt fire and smoke to descend the stairwell, their only means of escape. Johnson did not observe defendant at the home that day, but based on the prior incident and his many threats, Johnson identified defendant as the likely perpetrator. She described defendant and his vehicle, a white van, to the responding officers. Johnson's sister did observe defendant standing in the yard, however. The officers found two additional unused "Molotov cocktails" in the backyard.
>
> Based on information provided by Johnson, Detroit police officers travelled to a home on Waverly Street in Detroit. Defendant was standing outside, talking on a cell phone. Upon seeing the police, defendant tried to go into the house, but the occupants denied him entry. Defendant told the officers that he had been at the

2

> Waverly Street address all day, leaving only briefly on foot to purchase gasoline. However, defendant could not produce the container that he had allegedly filled. And defendant smelled strongly of gas. The police impounded defendant's van, which was parked in the street outside the house. Inside, they found a shotgun and two shotgun shells.

*People v. Ware*, 2016 WL 1125757, at *1 (Mich. Ct. App. Mar. 22, 2016).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised five claims:

> I. Trial counsel deprived Mr. Ware of his right to the effective assistance of counsel by failing to file a timely alibi notice or call a witness whose testimony would have supported his alibi defense.
>
> II. Mr. Ware's rights under the federal and state constitution to be free from unreasonable search and seizure were violated when the police department searched his car without probable cause under the pretext of an inventory search. If relief is not warranted as plain error, then counsel was constitutionally ineffective for failing to object.
>
> III. Trial counsel deprived Mr. Ware of his right to the effective assistance of counsel by failing to object to the admission of the personal protection order the complainant had filed against Mr. Ware.
>
> IV. Mr. Ware's Sixth and Fourteenth Amendment rights were violated by fact finding which increased the floor of the permissible sentence in violation of *Alleyne v. United States*, 133 S.Ct. 2151 (2013).
>
> V. Mr. Ware's sentences for aggravated stalking and felon in possession are invalid and remand is warranted.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, and it remanded the case to the trial court to determine whether resentencing was required in light of Petitioner's fourth claim. *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised the first three claims presented to the Court of Appeals. The Michigan Supreme Court denied the application for leave to appeal by standard order. *People v. Ware*, 885 N.W.2d 269 (Mich. 2016) (Table).

3

On remand, the trial court determined that resentencing was unnecessary because the court would have imposed the same sentence had the sentencing guidelines been advisory rather than mandatory. (ECF No. 7-23, PageID.1318-19.) Petitioner appealed this decision to the Michigan Court of Appeals, and the court affirmed in an unpublished opinion. *People v. Ware*, 2018 WL 3074419 (Mich. Ct. App. June 21, 2018). Petitioner again sought leave to appeal to the Michigan Supreme Court, but his application was denied by standard order. *People v. Ware*, 932 N.W.2d 609 (2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

4

### III. Discussion

A. Failure to Present Alibi Defense

Petitioner first asserts that his trial attorney rendered ineffective assistance of counsel when she failed to interview alibi witnesses and then failed to call them in Petitioner's defense at trial. After reciting the standard governing ineffective assistance of counsel claims, the Michigan Court of Appeals rejected the claim on the merits:

> The existing record does not support defendant's claim that defense counsel failed to conduct an adequate investigation. Defendant's August 1, 2014 witness list included "David Huges" as well as Jeffrey and Crystal Hall. Defendant's appellate attorney presented an affidavit to this Court, indicating that she spoke to David Donnell Hughes by telephone on June 10, 2015. Hughes corroborated that he was with defendant at the time of the September 27 firebombing and would have testified at defendant's trial, but that trial counsel never contacted him. Hughes promised to sign an affidavit prepared by appellate counsel, but thereafter failed to return counsel's calls and never signed an affidavit. Appellate counsel contacted trial counsel to discuss the matter and trial counsel indicated that she never spoke to Hughes because the number provided was "not in service." Interestingly, appellate counsel made no mention of trying to contact any of the other potential alibi witnesses identified by defendant.
>
> It appears that trial counsel did attempt to investigate, just as appellate counsel tried to do, but was blocked by uncooperative witnesses. Unable to speak to the potential alibi witnesses, trial counsel likely chose not to file a notice of alibi defense as required by MICH. COMP. LAWS § 768.20(1). Given the circumstances, we cannot find trial counsel ineffective in this regard. In the end, defendant was able to present his claim of alibi to the jury through his own testimony. And in light of the eyewitness testimony placing defendant at the scene of the firebombings, defendant's odor when interviewed by police on September 27, and his inability to substantiate that he had filled a benign container with gasoline, we cannot conclude that defendant likely sustained prejudice as a result of the absence of his proposed alibi witnesses.

*Ware*, 2016 WL 1125757, at *2–3 (footnote omitted).

To establish ineffective assistance of counsel, Petitioner must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland v.*

5

*Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

At trial, Petitioner testified that he was with Eddie McCampbell at his house on the date and time of the first incident, and he testified that he was with several other people at the Waverly house (where he was later arrested) on the date and time of the second incident. (ECF No. 7-17, PageID.683, 684-85.)

Petitioner's appellate counsel, after conducting her own investigation into the merits of the claim, filed an affidavit in the Court of Appeals. Counsel indicated that the only alleged alibi witness she was able to speak with, David Hughes, told her on the phone that he was with Petitioner at the time of the second incident. (ECF No. 7-19, PageID.869.) When appellate counsel attempted to contact Hughes again to sign an affidavit to that effect, her calls were never returned. (*Id*.) Appellate counsel also stated that she spoke with Petitioner's trial counsel, who had also attempted to speak with Hughes, but the phone number she had been given was not in service. (*Id*., PageID.870.)

In light of this record, the Michigan Court of Appeals did not unreasonably decide reject this claim for lack of evidence. Petitioner claimed that his trial counsel was ineffective for failing to call multiple alibi witnesses at trial, but even appellate counsel was able to speak with just one of the alleged witnesses. And when appellate counsel attempted to secure an affidavit from that witness, he would no longer return her calls. Appellate counsel provided no explanation for her

inability to locate, speak with, or secure affidavits from any of the other half-dozen purported alibi witnesses.

It was reasonable to conclude based on this record that Petitioner failed to establish that his counsel performed deficiently. Appellate counsel was equally unsuccessful in obtaining commitments from any of the uncalled witnesses, and like trial counsel, she was only able to locate one of them who was apparently not willing to sign an affidavit. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (alteration in original) (quoting *Strickland*, 466 U.S. at 689). There is no evidence that trial counsel's efforts to support Petitioner's alibi defense was deficient.

For the same reason, Petitioner fails to show prejudice. He can point to no evidence that there were witnesses actually willing and able to testify in his favor. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Conclusory allegations of ineffective assistance of counsel, such as this one, without any evidentiary support, do not provide a basis for federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has failed to demonstrate entitlement to habeas relief based on this claim.

B. Fourth Amendment Claim

Petitioner's second claim asserts that the search of his van violated his Fourth Amendment rights. The van was parked outside the Waverly address when Petitioner was arrested. When Petitioner was unable to make arrangements for someone to remove the van from the street after his arrest, police towed it and conducted an inventory search. *Ware*, 2016 WL 1125757, at *3-4. Petitioner asserts the inventory search performed after the van was towed, and during which the firearm was recovered, was purely pretextual and conducted without probable cause or a warrant.

The Michigan Court of Appeals found that the search did not violate Petitioner's Fourth Amendment rights because the officers had probable cause. *Id*.

Petitioner's claim is not cognizable on habeas corpus review because the Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (internal and end footnotes omitted). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Petitioner's presentation of his claim to the state appellate court suffices to preclude review of the claim in a habeas corpus petition. *Good*, 729 F.3d at 640; see also *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (stating that, because the petitioner had ample opportunities to present his claim in state court, he was precluded from obtaining habeas relief on the claim). Therefore, his Fourth Amendment claim is not cognizable.

C. Failure to Object to Admission of Personal Protection Order

Petitioner's third claim asserts that his trial attorney was ineffective for failing to object to the admission of the personal protection order the complainant obtained against Petitioner after the incident on September 7. The Michigan Court of Appeals found that as a matter of state law, the order was admissible and therefore counsel was not ineffective for failing to make a meritless objection:

> Defendant also challenges counsel's failure to object to the admission of the PPO secured by Johnson against defendant. He claims that this evidence was improperly used to bolster Johnson's credibility. This evidence was admissible, however, to establish the elements of the aggravated stalking charge.

8

> "Stalking" is defined by statute as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MICH. COMP. LAWS § 750.411i(1)(e). The making of a "credible threat" enhances a charge to aggravated stalking and is defined as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." MICH. COMP. LAWS § 750.411i(1)(b).
>
> The fact that Johnson secured a PPO was evidence that defendant's threats against Johnson were "credible" and caused Johnson to fear for the safety of her and her family. The PPO itself proved that Johnson actually secured the legal document. The evidence was therefore relevant and admissible. See MRE 401 (defining "relevant evidence" as "evidence having any tendency to make the existence" of a material fact "more probable or less probable than it would be without the evidence"); MRE 402 ("All relevant evidence is [generally] admissible."). Defendant does not contend that the PPO was rendered inadmissible under any exception to the evidentiary rule in MRE 403. Admission of the PPO was also consistent with MICH. COMP. LAWS § 600.2106, which states:
>
>> A copy of any order, judgment or decree, of any court of record in this state, duly authenticated by the certificate of the judge, clerk or register of such court, under the seal thereof, shall be admissible in evidence in any court in this state, and shall be prima facie evidence . . . of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree.
>
> Because the PPO was properly admitted into evidence, counsel had no ground to object and defendant cannot support his ineffective assistance claim. *Mack*, 265 Mich. App. at 130.

*Ware*, 2016 WL 1125757, at *5.

The state court's decision that the personal protection order was admissible under state law is dispositive of the claim. It is well-settled "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas courts "'must defer to a state court's interpretation of its own rules of

9

evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that the order was relevant and admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F.App'x. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003). The failure to object to relevant and admissible evidence in not ineffective assistance of counsel. *See Alder v. Burt*, 240 F.Supp.2d 651, 673 (E.D. Mich. 2003). Petitioner is not entitled to relief on this claim.

D. Sentencing Claims

Finally, Petitioner claims that his sentence is disproportionate to his crime and unreasonable. As indicated above, Petitioner was originally sentenced under the then mandatory state sentencing guidelines. In light of the fact that mandatory application of the guidelines was ruled to be unconstitutional in *People v. Lockridge*, 498 Mich. 358 (2015), the Michigan Court of Appeals remanded the case to the trial court to determine whether resentencing was required. *Ware*, 2016 WL 1125757, at *10. The trial court found that it would have imposed the same sentence had the guidelines been advisory. (ECF No. 7-23, PageID.1318-19.) Petitioner appealed, and the Michigan Court of Appeals affirmed. *Ware*, 2018 WL 3074419.

In *Lockridge*, aside from the making the state sentencing guidelines advisory rather than mandatory, the court limited the discretion of sentencing courts to impose a sentence outside the guidelines range. *Id*. at 392. Where the court sentences outside the applicable sentencing guidelines range, the resulting sentence must be reasonable. *Id*. "Reasonableness" as used in *Lockridge* is determined by application of the Michigan Supreme Court's decision in *People v. Milbourn*, 435 Mich. 630 (1990), which itself was based on state-law and not federal constitutional principles.

10

*See People v. Steanhouse*, 500 Mich. 453 (2017). Accordingly, Petitioner's claim that his sentence was unreasonable is based upon a state-law principle of reasonableness that is not cognizable on federal habeas review. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

With respect to Petitioner's proportionality challenge, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Federal courts must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "'[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F.App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). Petitioner's sentence, though lengthy, is not extremely disproportionate to the seriousness of his offenses. His conduct easily could have resulted in the death of several people.

As none of Petitioner's habeas claims merit relief, the petition will be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to

11

demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit. Therefore, a certificate of appealability is denied.

Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: July 6, 2022                                              s/Sean F. Cox
                                                                                      Sean F. Cox
                                                                                      U. S. District Judge